RObert Wise, plaintiff in error, vs. The State of Georgia, defendant in error.

[1.] To entitle a party, who has been convicted of an offence, to a new trial on the ground that the bill of indictment was defective, he must have excepted to the indictment, at the time and in the manner prescribed in the statute, and the Court must have overruled the exception.

[2.] A verdict finding the prisoner guilty on a charge of larceny from the house, is not contrary to evidence when it is proved that the harness was left, in the evening, in a house, is missing the next day, is found in possession of the accused shortly afterwards, who does not account how he became possessed of it.

[3.] The discovery of new and material evidence, after conviction, which was unknown to the party at his trial, and which he could not have known or produced by the use of any sort of diligence, is a good ground for a new trial.

Indictment, for larceny from house. Tried before Judge FLEMING, at May Term, 1857.

Robert Wise was indicted for stealing a set of harness belonging to Frederick A. Tupper, from the stable of Stephens & Elliston, in the city of Savannah.

Upon the trial, the following testimony was introduced on the part of the State:

*Thomas F. Stephens,* testified, "that he boarded Mr. Tupper's horse at his stable, his harness was also left with him. The stable was kept by him and Jacob Elliston, as Copartners, under the name of Stephens & Elliston. Every evening, before he left the stable, he always went around to see that every thing was right. Mr. Tupper came in between seven and eight o'clock, on the evening of the third of last July, and left his horse and harness. The next morning he came for his horse and harness, and on looking for the harness, he found it was gone. The harness was there the evening before. One of his boys told him the harness was gone, and on going and looking for it he found it was so. It was a buggy harness, and worth about forty dollars. Told his boy not to say anything about it. On next Sunday I told my son to go around and see if he could see anything of it. He was gone about twenty minutes, when he came back and said he had seen part of the harness. He asked him where it was; he told me, and going there I found it on a roan horse, formerly belonging to him, which the prisoner was driving in a funeral procession. He took Mr. Russell and

went after him, and had him arrested, and carried him to the guard house. He asked prisoner, at the guard house, where the balance of the harness was; he said, he did not know, that he had got the harness which he had, from his (witness's) boy, Lloyd. Prisoner had traces, bridle, hames and collar. The collar had a peculiar mark on it, which enabled him to indentify it. Prisoner said he knew nothing of the balance of the harness. Prisoner said that his boy Lloyd brought the harness to him, between nine and ten o'clock on the night of the third of July and lent it to him. Boy, Lloyd, went out in a carriage, about five o'clock in the evening, and came back a few minutes before twelve o'clock. The next day after he had prisoner arrested, he went to him and told him he wanted to get the balance of the harness, and told him if he would prove it on his boy Lloyd, he would not prosecute him. The prisoner then wrote him an order for the balance of the harness, while in Mr. Russel's office. It was in a shop near the gas works, kept by Mr. Larkin. He went there and found the balance of it. This took place in Savannah, in the County of Chatham, in the State of Georgia. Harness was the property of Frederick A. Tupper."

On his cross examination, witness said: "He had several boys in his employ. Had lost articles from his other stable. Did not see prisoner in the neighborhood of the stable the night the harness was taken. He went home and came back about ten o'clock and staid there until after 12 o'clock. He first saw the harness at the funeral. There were carriages and harness from his stable at the funeral. Boy Lloyd was in the habit of passing between his two stables."

*Frederick A. Tupper* testified: "That he left his horse and buggy at Stephens & Ellison's stables on the 3d July last. He bought the harness of William H. May, and paid him fifty dollars for it. His harness was also at the stable. He was in the habit of leaving it at the stable. Was told it was stolen. First saw it at the barracks or a portion of it; saw the other portion at Mr. Larkin's store, near the gas

works, which Mr. Stephens got.   He identified the harness as his."

Here the testimony closed.

Counsel for prisoner, contended that neither of the wit-nesses proved that the harness was stolen at all, or that the prisoner ever entered the house from which said harness had been removed.   That the confession of the prisoner, as to how he got possession of the harness was invoked and given in as part of the State's evidence, viz: "That he had bor-rowed the harness from a slave named Lloyd, the property of Thomas F. Stephens, and that the indictment did not sufficiently charge the offence.

The jury found the prisoner guilty.   Wherefore his coun-sel moved for a new trial on the following grounds:

1st. Because the verdict was contrary to law.

2d. Because the verdict was contrary to evidence.

3d. Because since his trial, the prisoner has discovered new and material evidence of which he had no knowledge until after his trial, and which no effort on his part could have procured.

The presiding Judge refused the motion for a new trial, and counsel for prisoner excepts.

The following affidavits were filed in support of the mo-tion for a new trial, on the ground of subsequently discover-ed evidence:

THE STATE,          In Chatham Superior Court,
    vs.                          May Term, 1857.
                         *Indictment* : Larceny from the house.
ROBERT WISE,    *Verdict* :

*Motion for New Trial.*

Personally appeared, before me, William Clark, who, being duly sworn, deposes and says, that he was at the bar room

of Robert Wise, the defendant, on the night of the third of July, 1856, between the hours of nine and ten o'clock. That during the time he was in said bar room, a negro boy slave, named Lloyd, the property of Thomas F. Stephens, came in with a harness, which he put upon the counter, and which, he said, he loaned to said Wise, to be used the next day. That the conversation, which passed between the said boy Lloyd and the said Wise was in reference to the loan of the harness, to go to a funeral. That the said Wise promised the said slave Lloyd to return the harness as soon as he had used it, which was to be for a few hours the next day. deponent has not seen said Wise since, having left the State soon after, and only returned on Friday last. That deponent has had no opportunity to communicate with the said Wise, or his counsel. That since the conviction of the said Wise, of which the deponent has just been informed, he made a communication of the foregoing facts to his friends, deponent not knowing before that he had been prosecuted.

his

(*Signed,*)        WM. ⋈ CLARK.

mark.

Sworn to, before me, this 17th June, 1857.
(*Signed,*) PHILIP M. RUSSELL, *J. P*

Personally appeared before me, Arthur Walsch, who being duly sworn, deposes and says, that he was in the employment of Stephens & Elliston, in July, 1856. That he was at their stable on the third of July of said year, and slept there that night, and the harnesses were put away that evening. That Stephens & Elliston kept severe dogs tied at the doors, and that no stranger could enter the stable without those within being alarmed. That deponent saw the negro man Lloyd, that evening, in the room where the harness was. That said Lloyd was a negro of very bad character, and was sent away on suspicion of burning the stable. That depo-

nent is not acquainted with Robert Wise, and has only made the above facts known since the trial.

his

(*Signed,*)    ARTHUR ⋈ WALSCH.

mark.

Sworn to, before me, this 20th June, 1857.

(*Signed,*) PHILIP M. RUSSELL, *J. P.*

Personally appeared, before me, James Larkin, who being duly sworn, deposes and says, that in July, 1856, he loaned his horse and buggy to Robert Wise, the defendant, to go to a funeral. That deponent's harness was not fit for use. That said Wise stated that he had borrowed a harness, and brought it to deponent's stable. That the said harness proved too large for deponent's horse, and deponent was about to bore a hole in the strap connecting the crupper, so as to make it fit, when said Wise objected, saying it was a borrowed harness. That deponent then made use of a part of his wagon harness, and that portion of the harness not used, and brought by Wise, was left at deponent's house. That deponent was subpœnaed on the part of the State, but was not sworn as a witness. That deponent never communicated to the said Wise, or his counsel, what facts he could prove, until after his trial, when the State declined to swear him, he, deponent believing that his testimony would be against the said Wise, and in favor of the State.

(*Signed,*)    JAMES LARKIN.

Sworn to, before me, this 19th June, 1857.

(Signed,) PHILIP M. RUSSELL, *J. P.*

Personally appeared, before me, Robert Wise, the defendant, who, being duly sworn, deposes and says, that since his trial and conviction he has discovered three witnesses, viz : William Clark, James Larkin and Arthur Walsch, whose testimony is material, and if he had known of such witnesses would have procured their testimony on his trial. That de-

Wise vs. The State.

ponent had no knowledge that said persons could establish what was sworn to by them, until after his trial. That William Clark, who states he was present, at his bar-room, on the night of the third of July, 1856, was a non-resident, and has been out of the State ever since, and has returned to Savannah but a few days since, and that deponent had no opportunity of knowing that his testimony would be materi-- al to him, or he would have endeavored to continue his case. That deponent did not know of any testimony material to his case, which could be given by James Larkin and Arthur Walsch, the latter this deponent has no acquaintance with. That deponent, or his counsel, were not apprised of these witnesses until after his trial, but have been discovered since, and that, had he known before of the existence of such testimony, as the said witnesses have given under affidavit, he would have procured their attendance or have moved to post- pone his trial.

(<em>Signed,</em>)    ROBERT WISE.

Sworn to, before me, this 18th June, 1857.
(*Signed,*) LAURENCE CONNELL, *J. P.*

LEVI S. D'LYON, for plaintiff in error.

SOL. GEN'L, for defendant in error.

*By the Court*—McDONALD, J. delivering the opinion.

The plaintiff in error, after conviction, moved in the Court below, for a new trial on three grounds:

1st. Because the verdict was contrary to law.

2d. Because the verdict was contrary to evidence.

3d. Because since his trial, the prisoner has discovered new and material evidence, which he did not know of at the trial, and which no effort on his part could have procured.

[1.] The first ground in this motion is predicated on the allegation that the indictment does not sufficiently charge

the offence of larceny from the house.   No objection appears
to have been made to the indictment until after conviction.
All exceptions which go merely to the form of the indictment,
must be made before trial.   *Cobb* 833.   *Penal Code, Par.*
*295.*   If the prisoner on being arraigned, shall demur to the
indictment, the demurrer must be made in writing.   *Ib. Par.*
*304.*   If the indictment be defective, the party is not entitled
to a new trial, on that account, under the Act of 1854, unless
he made his exception to it in the time, and in manner poin-
ted out by statute.   The presiding Judge should overrule
every exception not made in this manner; and it is only in
cases when the exception is *illegally* overruled, that the Act
requires the Court to grant a new trial to the applicant.

But the indictment in this case is substantially and almost
litterally in accordance with the statute.

[2.] It is insisted that the verdict is contrary to evidence,
and that the Court ought, on that account, to have granted
a new trial.

The harness had been deposited in the stable from which
it was stolen on the third of July.   On the morning of the
fourth, it was gone, and on Sunday, a part of it was found
in possession of the prisoner.   It became his duty, then, to
account for the possession, to repel the presumption of his
guilt.   His exculpatory statements at the time, that a part of
it was found on him, and subsequently, were submitted to
the jury.   They were at liberty, according to the credit that
they should think them entitled to, to give faith to them, or
disregard them entirely.   They did the latter, and were fully
justified by his denial of all knowledge of a part of the har-
ness, not on the horse when he was detected, and his almost
immediately giving an order for it, to Larkin, in whose pos-
session it was found.

[3.] In support of the ground, that since the trial the pris-
oner had discovered new and material evidence, his own
affidavit and the affidavits of William Clark, Arthur Walsch
and James Larkin are submitted to the Court.   The affidavit

Wise vs. The State.

of James Larkin is not insisted on.   The evidence of Arthur Walsch, as set forth in his affidavit furnishes but slight evidence of the innocence of the prisoner.   However strong it might be, or of whatever value, it is very certain that by the use of the least diligence, he might have informed himself of it. He made no inquiry, at the stable, of the owners, or employees, to ascertain the manner that the harness was taken, or the difficulties and dangers a stranger would encounter, in entering the stable to commit a theft.

. The affidavit of William Clark, is entitled to more consideration.   He states that he was in the bar-room of the prisoner on the night of the 3d of July, 1856, when a negro boy slave named Lloyd came in with a harness, which he said he loaned to prisoner to be used the next day.   Witness left the State soon after, and returned on the Friday before he made the affidavit.   The prisoner deposes that he had no knowledge that the persons making these affidavits could establish the facts sworn to by them until after his trial; and while it is apparent that, by the use of common diligence, he could have informed himself of the proof which could be made by Larkin and Walsch, it does not appear that he could, by the use of any sort of diligence, have known that Clark knew the facts deposed to by him.   He does not depose that Clark was in his bar-room on the night the harness was carried there, but to the statement of Clark that he was there.   It is not probable that he could remember every person who passed in and out of a place of so frequent resort as that where the harness was carried.   We will not undertake to pass upon the value of Clark's evidence to the defence of the prisoner in another trial.   It is apparently material to it, and the prisoner does not seem to have been guilty of negligence in not producing it on the former trial, and on that ground, therefore, the judgment of the Court below is reversed.

Judgment reversed.