## 32349. THE STATE v. EUBANKS.

HALL, Justice.

We granted certiorari to review a ruling of the Court of Appeals that Eubanks was entitled, following a special demurrer, to a perfect indictment; that an indictment which denominated one crime but charged another was imperfect; and that when the demurrer was overruled and Eubanks was subsequently convicted of the crime charged in the allegations of the indictment, he was entitled on appeal to a reversal on the conviction for this imperfection on the ground that subsequent proceedings

were nugatory, without reference to whether any prejudice accrued to him through the pre-trial ruling.

We think that those cases stating a defendant's entitlement to a perfect indictment have no literal application to a post-conviction review; that an inconsistency between the denomination and the allegations in the indictment is an imperfection, but is one that is subject to a harmless error test on appeal; and that a defendant who was not at all misled to his prejudice by any imperfection in the indictment cannot obtain reversal of his conviction on this ground. Accordingly, we vacate the judgment of the Court of Appeals.

The facts of this case show that an indictment was returned against Eubanks naming the crime of which he was charged theft by deception (Code Ann. § 26-1803), but alleging acts which do not constitute that crime but theft by conversion (Code Ann. § 26-1808). His pre-trial demurrer on this ground was overruled after a hearing at which his attorney pointed out the error and the prosecutor conceded that the crime was wrongly named. He was tried and convicted of theft by conversion, and brought seven enumerations of error to the Court of Appeals, one of which urged error in overruling the demurrer. The Court of Appeals reversed, ruling that the demurrer was erroneously overruled and that all subsequent proceedings were nugatory. The Court of Appeals thus did not reach the remaining enumerations of error.

Generally, the principle is well established in Georgia that "It is immaterial what the offense is called, if the averments of the presentment are such as to describe an offense against the laws of the state. It is not the name given to the bill which characterizes it, but the description in the averments of the indictment. [Cit.]" *Lipham v. State,* 125 Ga. 52, 53 (53 SE 817) (1906). Accord, *State v. Edwards,* 236 Ga. 104, 107 (222 SE2d 385) (1976); *Turner v. State,* 233 Ga. 538 (212 SE2d 370) (1975); *Marter v. State,* 224 Ga. 569 (163 SE2d 702) (1968). This rule is applied in many jurisdictions. See Annot., Error in Naming Offense, etc., 121 ALR 1088 (1939). It is useful to remember that the purpose of the indictment is to allow defendant to prepare his defense intelligently and to

protect him from double jeopardy. *Byers v. State,* 236 Ga. 599, 600 (225 SE2d 26) (1976); *Dobbs v. State,* 235 Ga. 800, 801 (221 SE2d 576) (1976).

The Court of Appeals in reversing the conviction was persuaded by the language of *Harris v. State,* 58 Ga. 332 (1876); *Kyler v. State,* 94 Ga. App. 321 (94 SE2d 429) (1956) and *Hamby v. State,* 76 Ga. App. 549 (46 SE2d 615) (1948), all of which recite that an accused is entitled to an indictment perfect in form as well as substance if he raises the question on special demurrer. It is certainly true, as an abstract matter, that an indictment which names one crime but alleges acts constituting another can hardly be called perfect. There would seem to be a conflict between the general principle that erroneous naming makes no difference, and the principle that accused is entitled to a "perfect" indictment in response to his special demurrer. We must inquire what these "perfect indictment" cases really mean, and whether there is anything about a special demurrer which would obviate application of a harmless error test.

A look at the history of demurrers to indictments in Georgia, beginning long before our current Appellate Practice Act, shows that we must distinguish challenges raised to indictments before and after trial.

A demurrer to an indictment may be general or special. A general demurrer challenges the very validity of the indictment and may be raised anytime; the special objects merely to its form or seeks more information and must be raised before pleading to the indictment.

"The true test of the sufficiency of an indictment to withstand a general demurrer, or a motion to quash, is found in the answer to the question: Can the defendant admit the charge as made and still be innocent? If he can, the indictment is fatally defective. *** If the indictment is fatally defective, the sufficiency of the indictment can be questioned by general demurrer or by motion in arrest of judgment. Woods, 10 Ga. App. 476, 478 (73 SE 608). . . Exceptions which go to the form of an indictment must be made by special demurrer or motion to quash. [Cits.]" Molnar, Georgia Criminal Law, p. 68 (1935).

In line with the fact that a general demurrer attacks the legality of an indictment, it is permissible to raise this

ground after verdict by a motion in arrest of judgment even if there was no earlier objection. *Ponder v. State,* 121 Ga. App. 788 (175 SE2d 55) (1970). See *Durden v. State,* 152 Ga. 441, 444 (110 SE 283) (1922). Such a motion in arrest asserts that the indictment contains a defect on its face affecting the substance and real merits of the offense charged and voiding the indictment, such as failure to charge a necessary element of the crime. *Ponder v. State,* supra. In contrast, a special demurrer is waived if not raised before pleading to the merits of the indictment. *Bramblett v. State,* 239 Ga. 336 (236 SE2d 580) (1977); *Jordan v. State,* 22 Ga. 545, 556 (1857); *Birt v. State,* 127 Ga. App. 532, 534 (194 SE2d 335) (1972); *Robertson v. State,* 127 Ga. App. 6 (192 SE2d 502) (1972); *Jackson v. State,* 112 Ga. App. 834 (1b) (146 SE2d 541) (1965); *Chambers v. State,* 22 Ga. App. 748, 753 (97 SE 256) (1918); Molnar, Georgia Criminal Law 69 (1935). See Code Ann. §§ 27-1501, 27-1601. If it is overruled, according to the old procedural law, the objection must be preserved by special exception preserved pendente lite, or must be presented in a bill of exceptions certified within 20 days; it is not grounds for a new trial. *Long v. State,* 118 Ga. 319 (45 SE 416) (1903); *Wise v. State,* 24 Ga. 31, 38 (1857); *Wheeler v. State,* 4 Ga. App. 325 (61 SE 409) (1908).

Under the new Appellate Practice Act, bills of exception and exceptions pendente lite are abolished. Code Ann. §§ 6-801, 6-904, 6-905. Objections to overruling a special demurrer can now be reviewed by the appellate court before trial under the provisions of Code § 6-701 (a) 2 (A), or after conviction.

The foregoing principles show that the erroneous overruling of a *general demurrer* may be insisted upon after trial, and can result in reversing a conviction. E.g., *Day v. State,* 79 Ga. App. 662 (54 SE2d 668) (1949). However, if no *special* demurrer is made, the ground is waived. If it is made and overruled and no subsequent issue is made (formerly, if there were no exceptions), the ground is waived. If it is made, overruled, preserved, and after verdict the overruling is determined to be error, there are two lines of cases in Georgia dictating opposite results. One line says all subsequent proceedings, including the trial and verdict, are nugatory and the error

cannot be harmless. The opposite line of cases applies the harmless error doctrine where no prejudice has accrued to defendant.

Looking first at the cases stating that an erroneous overruling renders nugatory subsequent proceedings, we find from this court, for example, in *Wise v. State,* 24 Ga. 31, supra, a statement in dicta that the illegal overruling of an exception requires a new trial; but it is not entirely clear whether the court referred hypothetically to a general or special demurrer, as the indictment was upheld. In *Henderson v. State,* 113 Ga. 1148 (39 SE 446) (1901) this court ruled that an indictment contained a defect which was subject to special demurrer, and the trial judge erred in not quashing it. However, it appears that all these proceedings occurred pre-trial, and did not involve the reversal of a conviction.

The first example we find of a reversal by this court of a conviction on the ground of an erroneous overruling of a mere special demurrer is *Haley v. State,* 124 Ga. 216 (52 SE 159) (1905). In a headnote decision, the court ruled that the alternative statement of the charges in the indictment made it subject to special demurrer and the conviction was reversed for its erroneous overruling. The court did not differentiate its ruling from those which came pre-trial, nor did it discuss the question of prejudice to defendant, though the facts strongly indicate that no such prejudice occurred. It is instructive that *Haley* has subsequently been cited by this court only twice, in *Garmon v. State,* 219 Ga. 575, 580 (134 SE2d 796) (1964), and *Pulliam v. Donaldson,* 140 Ga. 864, 865 (80 SE 315) (1913), neither of which involved the instant issue.

Two subsequent cases, *McDonald v. State,* 152 Ga. 223 (109 SE 656) (1921) and *Gilbert v. State,* 175 Ga. 276 (165 SE 120) (1932) reversed convictions for errors in indictments which were earlier demurred to, but neither characterized the demurrer as general or special. The *McDonald* case concerned counts based on an unconstitutional statute, and the *Gilbert* case concerned the improper joinder of offenses. In both, the prejudice to defendant seems patent.

One of the most significant cases in this vein from the Court of Appeals is *Isom v. State,* 71 Ga. App. 803 (32 SE2d

437) (1944) in which the court specifically ruled that in light of the *Haley* case it was precluded from finding harmless error in the erroneous overruling of a special demurrer. A dissenting opinion pointed out that "It is well settled that the erroneous overruling of a special demurrer is not harmful error where it affirmatively appears from the evidence in the case that the error did not result in injury to the party interposing the demurrer; and in determining whether the error has resulted in injury, the court may look to the record as a whole. [Cits.]" *Isom,* at 806. The majority, however, on motion for rehearing reiterated that following the failure to quash, all subsequent proceedings were *"necessarily* erroneous." Id. at 807. See also *Robinson v. State,* 93 Ga. App. 203 (91 SE2d 52) (1956) (prejudice seems apparent); *McMichen v. State,* 59 Ga. App. 896 (2 SE2d 507) (1939) (prejudice seems apparent).

We conclude that the better reasoned line of cases are those holding that on appropriate facts showing no prejudice to defendant, an error in overruling a special demurrer may be harmless. E.g., *Stull v. State,* 230 Ga. 99, 102 (196 SE2d 7) (1973); *Brown v. State,* 67 Ga. App. 550, 553 (21 SE2d 268) (1942). cf., *Hunsinger v. State,* 225 Ga. 426, 427 (169 SE2d 286) (1969). The principle we approve was well stated by the Court of Appeals in 1926: "Conceding that the court erred in overruling the special demurrer, it clearly appears from the record that the error was harmless, since the accused was already in possession of the very information called for by the demurrer. [Cit.]" *Clifton v. State,* 35 Ga. App. 399 (133 SE 287) (1926).

Even matters raised by general demurrer and pressed after conviction by motion in arrest of judgment are subject to a statutory harmless error test: "All exceptions which go merely to the form of an indictment shall be made before trial and *no motion in arrest of judgment shall be sustained for any matter not affecting the real merits of the offense charged in the indictment."* Code Ann. § 27-1601. (Emphasis supplied.) Since a special demurrer runs to form and not substance, how much more readily might an error in overruling it rather than a general demurrer be harmless?

As a general rule, "For purposes of review by the

appellate court, one or more judgments, rulings or orders by the trial court held to be erroneous on appeal shall not be deemed to have rendered all subsequent proceedings nugatory. . ." Code Ann. § 6-701(b). In cases involving the overruling of a special demurrer which was brought up on a bill of exceptions, where defendant had not yet gone to trial, it made more sense to apply a strict rule. But when trial has been had before the appellate court reviews the merits of the special demurrer, where no prejudice to defendant has occurred though the indictment is not perfect, reversal is a mere windfall to defendant and contributes nothing to the administration of justice. Henceforth, cases refusing to apply a harmless error test to the overruling of a special demurrer are disapproved and will not be followed. We observe in passing that the analogous Rule 7(c) (3) of the Federal Rules of Criminal Procedure contains its own harmless error test.

Returning to the initial inquiry concerning the meaning to be placed on cases holding that defendant is entitled to a perfect indictment, it is now plain that *Kyler, Harris* and *Hamby,* cited by the Court of Appeals, are distinguishable from this post-conviction case because they all deal with pre-trial determination of the form of an indictment and they are not necessarily authority for reversing a conviction.

Review of the hearing held upon Eubanks' special demurrer makes very plain that he knew the prosecutor was going to attempt to show him guilty of theft by conversion under Code Ann. § 26-1808; he knew the indictment erroneously named the crime as theft by deception (Code Ann. § 26-1803); and he heard the prosecutor admit the mistake and invoke the line of cases holding that the acts charged and described and not the name given the crime, controlled. Eubanks alleges no prejudice to himself, and we can discern none. Any error in failing to give him a "perfect" indictment is subject after trial to a harmless error test, and was manifestly harmless.

We turn now to a consideration of what the trial judge should have done, before trial, when the flaw in the indictment was called to his attention.

When an error in an indictment is pointed out on

special demurrer, the trial court does not have power to amend the grand jury's indictment in any material fashion. Therefore, if the special demurrer is upheld, the erroneous matter must be stricken, for example, a bad count, or the whole indictment must go back to the grand jury if the required change is material. The reasoning is aptly set forth in *Gentry v. State,* 63 Ga. App. 275 (11 SE2d 39) (1940).

"It is well established in this and other jurisdictions that an indictment can not be materially amended by striking from or adding to its allegations, except by the grand jury, and only before it is returned into court. It is bad practice for the court to do either; and if such additions or subtractions materially affect the indictment, it becomes void and can not be the basis of a conviction. In this connection see *Brooks v. State,* 178 Ga. 784 (3) (175 SE 6); *Goldsmith v. State,* 2 Ga. App. 283 (58 SE 486); *Hill v. State,* 41 Ga. 484, 501.

"The sustaining of a special demurrer, the result of which is either to strike from or add to the material allegations of an indictment, is equivalent to sustaining a general demurrer and quashing the indictment. But in this case that which was stricken was not material to the charge of possessing tax-unpaid 'alcoholic distilled and spirituous liquors,' and neither does the wording of the order, 'viz. whisky,' add anything material to the allegations in the indictment. It is a matter of common knowledge that alcoholic distilled and spirituous liquor is whisky, and striking the references to the other beverages, the possession of which the law does not prohibit, was merely stripping the indictment of surplusage." Id. at 276. Accord, *Brooks v. State,* 178 Ga. 784 (3) (175 SE 6) (1934).

We rule that the trial court has the power and the duty when a misnaming of a crime is called to his attention on special demurrer, to strike the erroneous name of the crime, leaving the criminal allegations as the grand jury found them. This is an immaterial change: the crime is not required to be named, for the indictment to be sufficient. *Turner v. State,* 233 Ga. 538 (212 SE2d 370) (1975); *Lee v. State,* 184 Ga. 327 (2) (191 SE 256) (1937); *Lipham v. State,* 125 Ga. 52 (53 SE 817) (1906) (crime

named "a felony"). Though we find no previous Georgia case authorizing the trial court to strike the erroneous name of the crime as surplusage, we note that this matter has been permitted to be changed by amendment in other jurisdictions where, as in Georgia, the name of the crime is considered to be immaterial. E.g., Palumbo v. New Jersey, 366 F2d 826, 828 (3rd Cir. 1966); State v. Sieff, 54 Mont. 165 (168 P 524) (1917); cf. Sinisgalli v. Warden, 153 Conn. 599 (219 A2d 724) (1966) (error amended in information, not indictment). But see Breinig v. State, 124 Ohio St. 39, 41 (176 NE 674) (1931).

For failure to find harmless error in misnaming the crime after Eubanks' conviction, the judgment of the Court of Appeals must be vacated and the case remanded for consideration of the remaining issues.

*Judgment vacated and remanded. All the Justices concur, except Marshall, J., disqualified.*

ARGUED JUNE 13, 1977 — DECIDED SEPTEMBER 7, 1977.

*Ben J. Miller, District Attorney, Paschal A. English, Jr., Assistant District Attorney,* for appellant.
*Don E. Snow,* for appellee.