## A98A1275. MOORE v. THE STATE.
### (506 SE2d 925)

ANDREWS, Chief Judge.

James William Moore appeals from the denial of his motion for new trial following his conviction of one count of burglary.

1. Moore's second enumeration challenges the sufficiency of the evidence while the third one addresses the denial of his motion for

---

directed verdict. We consider them together, as they both deal with the legal sufficiency of the evidence. OCGA § 17-9-1; *Martin v. State*, 219 Ga. App. 277, 278 (1) (464 SE2d 872) (1995); *Towns v. State*, 185 Ga. App. 545 (365 SE2d 137) (1988).

Viewed with all inferences in favor of the jury's verdict, *Bowman v. State*, 222 Ga. App. 893, 896 (1) (476 SE2d 608) (1996), the evidence was that around 10:00 p.m. on Sunday, October 29, 1995, Mr. and Mrs. Zimmerman were watching television in their home across Ellis Street from Vic's Harley Shop in Augusta. Mrs. Zimmerman heard a noise and looked out a side window of the house, but saw nothing. Hearing the noise a second time, she walked to a window on the front of the house and saw two men, one white and one black, exiting the gate at the rear driveway of Vic's where motorcycles were taken in and out of the shop. The gate was pried open enough for the men to slip through. The driveway ran behind Hildebrandt's, a grocery fronting on Sixth Street at the corner of Ellis Street. The two men walked slowly toward Sixth Street, beside the grocery, looking up and down Sixth Street. The black man was wearing a leather jacket and white cap and was later identified as Moore. He walked all the way to the front of the grocery and then returned. The white male, later identified as Lawson, walked halfway up Ellis toward Sixth. Mrs. Zimmerman testified the two men appeared to be talking to each other after Moore returned and then they both went back inside the gate.

Mrs. Zimmerman called the police while Mr. Zimmerman watched from the front window as Moore, wearing a white baseball cap, walked out of Vic's driveway directly toward the Zimmermans' house. He stood momentarily, looked around, and then took off the cap and threw it on the ground near a fence. He then walked down the fence toward Sixth Street and the railroad tracks.

Officers Simmons and Lafferman responded to the "signal 98," burglary in progress call. Simmons rounded the corner and saw Moore walking down the street right beside the building across from Hildebrandt's toward Sixth Street. Moore was detained by Simmons while Lafferman proceeded to the rear of the grocery and found Lawson attempting to climb out of a hole in an air conditioning vent with a box of beer and wine. A white ball cap was retrieved by officers from beside the fence next to the Zimmermans' house.

The owner of the grocery had driven by it on her way home from church about 9:30 p.m. and noticed nothing amiss. Upon arriving after being called by the police, however, she discovered a window broken on the Ellis Street side of the store, in addition to the damaged air conditioner vent. The window had been boarded up on the inside for years and entry could not be obtained there.

Co-defendant Lawson testified that he was in town working with

the fair and met Moore that evening at a local bar, where they proceeded to drink until closing time. They discussed getting some "crack and stuff" by breaking into mailboxes to get money and left the bar together. While no mailboxes were plundered, Lawson asked Moore what Hildebrandt's was and was informed it was a store. Both men proceeded to the drive behind the store, pried open the unlocked gate and entered the alley where Lawson found a pipe and broke out the air conditioner vent. Lawson then got two concrete blocks, stacked them, and crawled through the vent into the store where he assembled the beer and wine in a cardboard box. When he was performing all these acts, Moore was standing there beside him. When, however, he was crawling back out of the vent, Moore was gone.

The evidence was legally sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hildebrand v. State*, 209 Ga. App. 507, 511 (4) (433 SE2d 443) (1993).

2. Moore's first enumeration is that the court erred in allowing hearsay into evidence in the form of Lawson's post-arrest statement to Detective Williams which implicated Moore.

As indicated in Division 1, Lawson testified during Moore's trial and was subject to cross-examination. During this cross-examination, Moore's counsel attempted to show his self-interest in testifying because a notice of recidivist treatment originally filed against Lawson had been withdrawn. In attempting to do so, she referred to portions of his interview with Detective Williams in which Lawson used "we" in describing the breaking into the air conditioner vent and crawling into the store. During cross-examination, Lawson clarified that only he did these acts, but also stated that "I told him to watch out for me. He said, okay."

Thereafter, the State called Detective Williams and proffered the entire post-arrest statement of Lawson, pursuant to *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985) which held that out-of-court statements consistent with in-court testimony are admissible and that "[t]he concerns of the rule against hearsay are satisfied." Id.

In the trial court, the objection made to introducing the entirety of the statement was "I would object. It would have to be redacted. Again, we have had . . . Mr. Lawson, testify, and have been able to cross examine him. Unless [the State] is trying to put this in under [*Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982) (holding that a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence)], or something like that, claiming it's totally inconsistent, I don't see any foundation for it." An objection was also made on the best evidence rule.

Pretermitting whether the argument made here regarding hearsay was included in the above objection, the statement was admis-

sible under either *Cuzzort* or *Gibbons* and the best evidence rule is not applicable to this situation. *Boddie v. State*, 269 Ga. 5 (494 SE2d 651) (1998); *Woodard v. State*, 269 Ga. 317 (496 SE2d 896) (1998); *Duckworth v. State*, 268 Ga. 566 (492 SE2d 201) (1997).

3. Finally, Moore contends that the trial court erred in charging on parties to a crime.

The objected to portion of the charge was that "[a]lthough the indictment specifically alleges the personal involvement of [Moore], and there is no evidence of such involvement at trial, [Moore's] actions as an aider and abetter, if you so find, in the commission of the crime, allow him to be convicted of the crime."[1] It is claimed that this portion of the charge is confusing because "aider" and "abetter" are not defined anywhere in the charge.

Initially, we note that no authority is cited for the proposition that these are technical terms or words of art needing separate definition for the jury and no request for such a charge was made by Moore.

Further, to "abet" is generally defined as "[t]o encourage, incite, or help, esp. in wrongdoing," while to "aid" is generally defined as "[t]o give help or assistance to." The American Heritage Dictionary 67, 89 (2nd College Ed. 1985). "Terms of common usage and meaning need not be specifically defined in the charge to a jury. [Cits.]" *Philpot v. State*, 268 Ga. 168, 171 (3) (486 SE2d 158) (1997).

There was no error. *Webb v. State*, 228 Ga. App. 624 (1) (492 SE2d 312) (1997).

*Judgment affirmed. Johnson, P. J., and Smith, J., concur.*

DECIDED SEPTEMBER 17, 1998.

*Stanley C. House*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

---

[1] This is the wording contained in Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, p. 34 (2nd ed.).