A99A1695. BULLARD et al. v. THE STATE.
(530 SE2d 265)

ANDREWS, Presiding Judge.

Lester and Carol Bullard appeal from the judgment entered after a jury found them guilty of two counts of Medicaid fraud and one count of false writings. Because we conclude there was no reversible error, we affirm the judgment.

Lester and Carol Bullard, husband and wife, were accused of submitting fraudulent claims to the Georgia Department of Medical Assistance and accepting payments of approximately $340,763 to which they were not entitled. The indictments alleged that Lester Bullard, a physician, and his wife Carol, who also worked in his medical office, solicited children who were Medicaid recipients to come to their medical office for the checkups required to attend a camp program. The Bullards then used the children's Medicaid numbers to bill the Georgia Department of Medical Assistance for psychotherapy services for the children, which were not provided. The Bullards were also accused of putting false documents in the files of these children and submitting these documents to the Georgia Bureau of Investigation and the Attorney General to try to justify the billings.

1. In their first enumeration, the Bullards claim that the trial

court erred when it denied Carol Bullard's motion for directed verdict on the two Medicaid fraud counts because there was no evidence that she participated in the Medicaid fraud. We disagree.

Contrary to the Bullards' argument that Carol Bullard had no role in the recruitment of the Medicaid children to the office, there is a letter from Lester Bullard to Pam Dixon, who worked in their office as a phlebotomist technician, in which he writes of a meeting between her and Carol Bullard. At that meeting, Carol Bullard and Dixon agreed that Dixon's daily assignment was to schedule 50 additional Medicaid children every week to come in for health checks. Lester Bullard wrote that he and Carol Bullard were requesting that Dixon keep written reports on the number of patients called and submit the written report to Carol Bullard each week.

Even if this reference to her involvement in getting as many Medicaid recipients as possible into the office was not sufficient to show Carol Bullard's active participation in the Medicaid fraud scheme, there was additional testimony that Carol Bullard was present in the office and participated in the fraudulent scheme. She was in the office when the camp kids started coming in, and her role was to direct and organize the procedures for examining the children. The phlebotomist technician working in the office at the time testified that Carol Bullard told her she must stay and help with the examinations of the camp kids, who usually came in late in the day. Carol Bullard also would occasionally perform the physical examinations of the children.

The Bullards claim there was no evidence that Carol Bullard actively participated in the actual billing of the claims, because she did not take over the billing department until after the fraudulent claims were billed. That is not dispositive in light of the evidence discussed above. Moreover, the evidence is undisputed that Carol Bullard actively participated in creating forms to put in the files of the Medicaid recipients after the investigation began.

2. The Bullards also claim the trial court should have granted Carol Bullard's motion for directed verdict because she is not a "provider" under OCGA § 49-4-146.1 (b) (2), which states that it is unlawful "[f]or any provider knowingly and willfully to accept medical assistance payments to which he is not entitled or in an amount greater than that to which he is entitled, or knowingly and willfully to falsify any report or document required under this article." "Provider" is defined as "an actual or prospective provider of medical assistance under this chapter." OCGA § 49-4-146.1 (a) (7).

The State points out that Carol Bullard's wide range of activities and supervisory role in the medical office made her a party to the crime, and we agree. Even assuming Carol Bullard cannot be considered a provider, OCGA § 16-2-20 (a) states, in pertinent part, that a

person may be found guilty as a party to a crime if she intentionally aids or abets in the commission of the crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime. Thus,

> [p]articipants to a crime may be convicted although they are not the actual perpetrator of the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of the crime.

(Punctuation omitted.) *Sands v. State*, 262 Ga. 367, 368 (2) (418 SE2d 55) (1992). Here, the evidence as discussed above was sufficient for a jury to find that Carol Bullard was guilty as a party to the crime of Medicaid fraud beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Next, the Bullards contend the trial court erred in granting the State's motion in limine and excluding the testimony of 22 witnesses on behalf of Lester Bullard and one witness and medical records on behalf of Carol Bullard.

(a) *Lester Bullard's witnesses*. The evidence at the hearing was that Lester Bullard's defense counsel faxed a list of 22 witnesses to the State on the Saturday before trial began on Tuesday. The State objected to these witnesses, stating that there was no justification for it and the State would be prejudiced because there was not enough time to interview them all before trial. Defense counsel stated that he had just found out about the witnesses "last week." The trial court granted the State's motion in limine, finding "objective bad faith" in serving the State with a list of twenty-two witnesses one working day before trial. The trial court also found that allowing these witnesses to testify would prejudice the State's case.

OCGA § 17-16-6 provides that the court may, upon a showing of prejudice and bad faith, prohibit the defendant from calling the undisclosed witnesses.

> In reviewing a trial court's decision on a motion in limine, we construe the evidence most favorably to uphold the findings and judgment, and must adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. Further, since the trial court sits as the trier of facts, its findings will not be disturbed if there is any evidence to support them.

(Punctuation omitted.) *Davis v. State*, 226 Ga. App. 83, 84 (1) (485 SE2d 508) (1997).

Here, there was evidence that the court had put the case on call

for trial at least two months earlier. Defense counsel did not have a sufficient explanation as to why he waited to disclose the witnesses until just before the start of trial. Further, the trial court correctly concluded that it would now be very difficult for the State to interview 22 witnesses during trial.

Moreover, as the State points out, there was no proffer at trial as to the testimony of the 22 witnesses for Lester Bullard. In appellants' brief, the only citations to the record concerning what the testimony would have shown are to evidence introduced at the motion for new trial hearing. In order for this Court to determine whether the claimed error, if any, was harmful, there must be an offer of proof in the record concerning the testimony Bullard expected the witnesses to give. *Hill v. State*, 232 Ga. App. 561, 563 (502 SE2d 505) (1998).

(b) *Carol Bullard's witness and evidence.* The prosecutor stated at the hearing on the State's motion in limine, that she had been told less than 24 hours before trial that Carol Bullard planned to call her sister as a witness and also to introduce Carol Bullard's medical records from several years earlier.[1] Defense counsel told the trial court that Bullard's sister would testify that her sister was a good student, was training to be a doctor, and then had an accident which left her in a coma. Because of this accident, Carol Bullard never completed her medical training. As the trial court correctly found, an accident which occurred in 1981 was not relevant to any issue in the case. Thus, Carol Bullard can show no harm because the witness was not allowed to testify. In order for an alleged error to be grounds for reversal of a conviction, the appellant must show not only error, but also ensuing harm. *Goodwin v. State*, 208 Ga. App. 707, 709 (431 SE2d 473) (1993). Moreover, trial counsel never gave the court a satisfactory explanation of why he did not list the sister as a possible witness until just before trial.

Therefore, because there was evidence to support the trial court's findings of bad faith and prejudice to the State by disclosing 23 additional witnesses right before trial, the trial court's factual findings were not clearly erroneous, and the trial court did not err in granting the State's motion in limine.

4. In their next enumeration of error, the Bullards claim that trial counsel were ineffective because they did not comply with the discovery rules and identify the witnesses and evidence discussed above in time to introduce them at trial. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced

---

[1] Appellants' brief makes no argument about the relevancy or admissibility of the medical records; therefore, we will not address this issue.

his defense. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984); *Gross v. State*, 262 Ga. 232, 233 (1) (416 SE2d 284) (1992). The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel. Id.

In analyzing a claim of ineffective assistance of counsel, we note at the outset that a trial court's finding that a defendant has not been denied effective assistance of counsel will be affirmed unless clearly erroneous. *Warren v. State*, 197 Ga. App. 23, 24 (1) (397 SE2d 484) (1990). Further, the Bullards must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct. *Snyder v. State*, 201 Ga. App. 66, 69 (8) (410 SE2d 173) (1991).

With regard to the first prong, we conclude that trial counsel's performance was not deficient. At the hearing on the motion for new trial, two of the witnesses who were not allowed to testify gave evidence. As the State points out, this evidence would not have helped Lester Bullard's case. Rather, the testimony showed that Lester Bullard could not possibly have provided psychological counseling for all of the children he claimed to have seen. Moreover, Lester Bullard's trial counsel testified at the hearing and said he was very "tentative" about calling these witnesses. He said he and Bullard did not always agree on trial strategy.

Carol Bullard's sister testified and said that her sister was not that involved in running the office during the time in question. But, on cross-examination, she admitted that she lived out of state and could not say that she visited as often as even once a month.

But, even assuming that trial counsel's performance was deficient in failing to comply with the discovery rules and identify the witnesses and medical evidence in time to use them at trial, there is nothing in the record to show that these witnesses or this evidence would have changed the outcome. The evidence is undisputed and overwhelming that the Bullards actively and aggressively recruited children with Medicaid numbers and then billed these numbers for services that were not performed. Thus, there is no reasonable probability that the jury would have reached a different verdict absent the claimed error of counsel. *Gross*, supra.

5. Next, the Bullards claim the trial court erred in not striking the testimony or declaring a mistrial when the State introduced bad character evidence about Carol Bullard. The first instance complained of was an employee's testimony that the Bullards put too much pressure on her and did not respect her as a person. This testimony concerned the instructions to the employees and the pressure exerted on the employees to make up charts in response to the GBI subpoena. Because this was directly related to one of the offenses

charged in the indictment, the evidence was admissible. *Frazier v. State*, 257 Ga. 690, 698 (362 SE2d 351) (1987).

The other objected-to testimony is an employee's statement that Carol Bullard would say things to hurt her feelings and another employee's statement that she left her job because of a conflict with Carol Bullard over a salary increase. The testimony of two other employees was never objected to, and defense counsel even explored some of the remarks on cross-examination.

There was no error. Much of the testimony was relevant because it showed the extent of Carol Bullard's involvement in the daily running of the medical office. In any event, none of the testimony rises to the level of general bad character evidence under OCGA § 24-9-20. See, e.g., *Seals v. State*, 176 Ga. App. 67, 68 (335 SE2d 306) (1985) (testimony by detective that photo of defendant was a "mug shot" did not put defendant's character in issue); *Lester v. State*, 90 Ga. App. 43 (81 SE2d 894) (1954) (officer's testimony that he was at defendant's house because complaints were made against defendant did not put defendant's character into issue).

6. The Bullards claim that the trial court erred in refusing to give two requested jury charges. The charges stated that an accessory after the fact cannot be found guilty of the original crime but instead commits the separate offense of obstruction of justice. The Bullards argue that Carol Bullard's defense was that she participated in creating files only in order to cover up the Medicaid fraud but was not part of the fraud itself. Therefore, Carol Bullard was entitled to have the jury instructed on this theory of defense.

"An accessory after the fact is not a party to the crime under OCGA § 16-2-21, but the act constitutes the separate offense of obstruction of justice." *Martinez v. State*, 222 Ga. App. 497, 499 (2) (474 SE2d 708) (1996). Because Carol Bullard was neither indicted nor charged with the offense of felony obstruction, but rather with the offense of making or using false writings, it would have been improper for the trial court to charge the jury on this offense. Id. The trial court does not err in refusing to give a charge if any portion is inapt, incorrect, confusing or not authorized by the evidence. Id. Moreover, a review of the jury charge as a whole shows that the trial court adequately instructed the jury on the presumption of innocence and the State's burden of proof and their duty to acquit in the event they did not find Bullard guilty of each offense charged beyond a reasonable doubt. *Stansell v. State*, 270 Ga. 147, 151 (510 SE2d 292) (1998).

7. The Bullards also argue that the trial court erred in not instructing the jury that a false writing submitted to an agency must be material before it can be considered a crime. There is no merit to this enumeration. As the State points out, the Bullards were charged

with making or using "any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry. . . ." OCGA § 16-10-20. Because the specific act charged from that Code section does not contain the word "material," there was no error in the charge.

8. Next, the Bullards contend that the charge failed to adequately explain the elements of the Medicaid fraud offenses and failed to define the terms "provider" or "entitled." They do not point to any requests to charge on these elements, nor do they cite to any authority in support of their argument. Further, these are not terms of art that require explanation. *Moore v. State*, 234 Ga. App. 424, 427 (506 SE2d 925) (1998). "Terms of common usage and meaning need not be specifically defined in the charge to a jury." (Punctuation omitted.) Id.

9. In their last enumeration of error, the Bullards argue that the indictment failed to allege that either Lester or Carol Bullard was a "provider" under OCGA § 49-4-146.1 (b) (2). They claim this rendered the indictment fatally defective.

That is not the law. The purpose of the indictment is to allow the defendant to intelligently prepare his defense and protect him from double jeopardy. *State v. Eubanks*, 239 Ga. 483, 484-485 (238 SE2d 38) (1977). A post-conviction review of an allegation of a defective indictment is one of harmless error. A defendant who was not misled to his prejudice by any alleged imperfection cannot obtain a reversal of his conviction on this ground. Id. Because the Bullards show no harm from the alleged defect, there was no error.

*Judgment affirmed. Ruffin and Ellington, JJ., concur specially.*

RUFFIN, Judge, concurring specially.

I concur in the Court's judgment, but I write separately with respect to Division 3 (a) concerning the State's motion in limine to exclude 22 of Bullard's witnesses.

Defense counsel faxed a list of 22 witnesses to the State on the Saturday before the trial began the following Tuesday. The trial court granted the State's motion in limine to exclude the witnesses, ruling that the defense acted in "objective" bad faith and prejudiced the State with its eleventh-hour list. By flatly excluding all 22 witnesses, without exploring the possibility of less drastic alternatives, the trial court may have needlessly hampered Bullard's ability to present a defense. Instead of granting the motion in limine wholesale, the trial court could have ascertained whether defense counsel could whittle down the witness list by eliminating any repetitive witnesses. As defense counsel has represented that the "vast majority" of the 22 witnesses were character witnesses, it is likely that many of them were redundant. The State could then have been permitted to inter-

view the remaining witnesses, to the extent feasible, before and during the trial. A more flexible approach such as this could have expanded Bullard's defense options without "ambushing" the State.

I agree, however, that Bullard has failed to show that he was harmed by any error on the part of the trial court because he failed to offer proof concerning the testimony he expected the witnesses to give.

I am authorized to state that Judge Ellington joins in this opinion.

DECIDED MARCH 1, 2000 —
RECONSIDERATION DENIED MARCH 17, 2000 — 

*Garland, Samuel & Loeb, Donald F. Samuel,* for appellants.
*J. Tom Morgan, District Attorney, Thurbert E. Baker, Attorney General, Nancy B. Allstrom, Assistant Attorney General,* for appellee.