### A98A0732. JAY v. THE STATE.
(503 SE2d 563)

Judge Harold R. Banke.

Fredrick Bernard Jay was convicted of aggravated assault for a brutal attack on his wife. Notwithstanding the victim's absence from Jay's trial, the jury convicted him. On appeal, he contends that the underlying indictment was fatally defective and that the trial court erred in admitting several of the victim's statements made to others shortly after the beating.

This domestic violence case arose from a social outing which turned ugly. When the victim and her dinner companions were leaving Dugan's Restaurant, Jay suddenly appeared and began arguing with the victim, striking her repeatedly on the head, shoulders, and back. When a customer, Cynthia Brown, observed Jay bang the victim's head up against the cement and drag her "like a rag doll" to Jay's Lexus, she contacted 911 and reported the tag number. After Jay beat the victim with his fists at their apartment, she managed to escape and sought help from her pastor, Howard Franklin. When she disclosed to Franklin that Jay had hit her with his fists and another object, Franklin summoned police and paramedics. While the paramedics were administering treatment, the victim told responding officer, F. L. Stanford, that Jay had beaten her and struck her in the head with a gun. According to Stanford, the victim was bleeding

heavily from her face and back of her head and had bruises and hand marks on her neck. The emergency room physician, Dr. Jorje Mujica, testified that the victim said that her husband had assaulted her with his fists and a gun, causing her to lose consciousness. While at the hospital, despite having difficulty speaking, she managed to tell Detective Raymond Ice that her husband beat her up and pistol-whipped her at Dugan's and beat her at their apartment. Her statement was consistent with her obvious physical injuries. The next day, the victim provided a taped statement to Detective Ice in which she said that Jay had beaten her and punched her in the face with his fists.

Less than three weeks before trial, the victim suddenly disappeared. Despite investigators' repeated efforts to locate her to serve her with a subpoena, her whereabouts remained unknown. The trial court issued a material witness warrant and delayed the trial for about a week to enable the State to find her. Due to Jay's speedy trial demand, the case proceeded to trial without the victim. The jury convicted Jay of aggravated assault with his fists but did not convict him of aggravated assault with a gun or possession of a firearm during the commission of a crime. *Held*:

1. Jay contends that the trial court erred in denying his motion to dismiss because the indictment was fatally defective.

The indictment at issue accused Jay of an assault inflicted on the person of his wife "with his fists, objects which when used offensively against said person, were likely to result in serious bodily injury contrary to the laws of [this] State. . . ." The pertinent essential elements of aggravated assault are: (1) an assault on a person as defined in OCGA § 16-5-20 and (2) with use of a deadly weapon or an object which when used offensively against a person is likely to or actually does result in serious bodily injury. OCGA § 16-5-21 (a) (2). Subsection 2 is a disjunctive clause. Because the indictment charged that Jay's fists were likely to result in serious bodily injury, no reference to deadly weapons was required. See *Davis v. State*, 184 Ga. App. 230, 232 (2) (361 SE2d 229) (1987) (the two clauses are "alternative" bases for conviction).

Notwithstanding Jay's claim to the contrary, intent to injure is not an element of aggravated assault with a deadly weapon when the assault element is predicated on OCGA § 16-5-20 (a) (2). *Matthews v. State*, 224 Ga. App. 407, 408 (1) (481 SE2d 235) (1997). Accord *Osborne v. State*, 228 Ga. App. 758, 759 (492 SE2d 732) (1997).

Jay's reliance on *Smith v. Hardrick*, 266 Ga. 54 (464 SE2d 198) (1995) is misplaced. In that case, the aggravated assault indictment merely alleged " 'an assault upon (the victim) by placing his hands around (her) neck and using his hands to apply pressure to her neck contrary to the law.' " Id. The fatally defective indictment in *Smith*

failed to allege "with a deadly weapon," or "with any object . . . likely to . . . result in serious bodily injury." Id. Here, we find no error. See *State v. Bolman*, 222 Ga. App. 534, 535 (474 SE2d 721) (1996).

2. The trial court did not err in determining that the victim was unavailable. According to the victim's grandmother with whom she had been living, the victim unexpectedly failed to come home from work one day, leaving her children behind. The grandmother testified that she had not heard from her and did not know her whereabouts despite checking with the victim's sister and mother.

Unavailability depends upon a showing that the party seeking admission of the hearsay made diligent efforts to find the absent witness and bring the witness to court. *Jones v. State*, 250 Ga. 166, 168 (2) (296 SE2d 598) (1982). The evidence showed that investigators exerted conscientious and repeated efforts to locate her. Jay has made no showing that the trial court abused its discretion in deeming the witness unavailable. See *Banks v. State*, 262 Ga. 190, 191 (2) (415 SE2d 634) (1992).

3. Jay contends that the trial court erred in admitting the victim's remarks made to Detective Ice because her statements lacked sufficient trustworthiness to render them admissible under the necessity rule. OCGA § 24-3-1 (b). See *Mallory v. State*, 261 Ga. 625 (2) (409 SE2d 839) (1991) ("necessity" and "particularized guarantees of trustworthiness" must be established); *McKissick v. State*, 263 Ga. 188, 189 (3) (429 SE2d 655) (1993).

One statement, the victim's first conversation with Detective Ice occurring at the hospital shortly after the commission of the crime, was admissible as part of the res gestae. OCGA § 24-3-3; *Griffin v. State*, 251 Ga. 431, 432 (2) (306 SE2d 283) (1983); see *Stovall v. State*, 216 Ga. App. 138, 139 (1) (453 SE2d 110) (1995).

The other statement, the victim's taped interview made 18 or 19 hours later to Detective Ice, was not part of the res gestae. However, the victim's minister and her treating physician had testified, without objection, to essentially the same facts. Even assuming for the sake of argument only that the trial court erred in deeming it sufficiently trustworthy, the evidence was doubtlessly cumulative and the failure to exclude it would not constitute reversible error. *Eaton v. State*, 184 Ga. App. 645, 646 (1) (362 SE2d 375) (1987). See *Smith v. State*, 164 Ga. App. 704 (2) (297 SE2d 490) (1982).

4. The trial court did not err in admitting the victim's statements to Officer Stanford, who responded to the emergency call. These spontaneous declarations which occurred very shortly after the commission of the beatings and were a natural consequence thereof, were admissible as part of the res gestae. OCGA § 24-3-3. *Horn v. State*, 140 Ga. App. 592, 596 (7) (231 SE2d 414) (1976).

*Judgment affirmed. Birdsong, P. J., and Smith, J., concur.*

DECIDED MAY 26, 1998.

*Robert L. Mack, Jr.*, for appellant.
*J. Tom Morgan, District Attorney, Benjamin M. First, Barbara B. Conroy, Assistant District Attorneys*, for appellee.