A04A2028. WINSTON v. THE STATE.
(607 SE2d 147)

PHIPPS, Judge.

A jury found Hazel Winston guilty of reckless driving and failure to exercise due care after she struck two pedestrians with her truck. On appeal, she argues that the evidence was insufficient to support the verdicts and that the trial court erred by allowing her to represent herself, by making various adverse evidentiary rulings, and by failing to charge the jury on her sole defense. Because these arguments lack merit, we affirm.

Viewed favorably to the state, the record shows that between 10:30 and 11:00 p.m. on a rainy night in November 2000, Allan Brown and Sherry Burton left their hotel on Old National Parkway in Fulton County to walk to a restaurant across the street. They crossed the four-lane street at a point that was not marked as a pedestrian crossing. Before crossing, Brown looked both ways and saw no cars approaching. Brown and Burton safely traversed three of the four lanes, but Winston's truck struck them as they were crossing the fourth lane. Brown's body was thrown 33 feet; Burton's body was thrown 60 feet; and both were injured. No skid marks were found at the scene.

Brown testified that Winston's truck did not have its headlights on, that he did not see it until immediately before it hit him, and that he had no time to avoid the collision. He estimated that the truck was traveling between 30 and 40 miles per hour, and he stated that Winston did not blow the horn.

Burton had no memory of the collision. She testified, however, that Winston visited the hospital the next day and said, "[W]hen I looked up, it was too late."

Officer Craig Harper of the College Park Police Department responded to the incident. He testified that Winston told him that she was running late for work, that she had looked down for something on the floorboard, and that when she looked up and saw Brown and Burton, it was too late to stop. In his accident report, Harper wrote that Winston had said that she was "in a hurry," "possibly destracted [sic] and not completely paying attention." He took her to a hospital for a blood test, which showed no alcohol in her system. Based on the distances that the victims' bodies traveled after the collision, Harper cited Winston for driving too fast for conditions. According to Harper, the speed limit on Old National Parkway was 25 miles per hour.

Winston was charged by accusation with reckless driving, failure to exercise due care, and driving too fast for conditions. She represented herself at trial and called no witnesses to testify on her behalf. The jury found her guilty of the first two charges, but not guilty of the third.

1. Winston contends that the evidence was insufficient to support her convictions. We disagree.

(a) Reckless driving occurs when a person drives a vehicle "in reckless disregard for the safety of persons or property."[1] Because "the offense of reckless driving may be committed in a variety of ways . . . , the State needed only to present evidence showing that [Winston] drove [her] car in a manner exhibiting reckless disregard for the safety of persons or property."[2] The state met this burden by presenting evidence that Winston was driving above the speed limit without headlights on a rainy night, was looking down instead of watching the road ahead, and neither sounded her horn nor applied her brakes when she saw Brown and Burton just before she hit them. This evidence was sufficient to support her reckless driving conviction.

Winston cites *Klaub v. State*,[3] but that case is inapposite. In *Klaub*, we reversed the defendant's conviction for vehicular homicide by reckless driving because, aside from the fact that he struck and killed a pedestrian, there was absolutely no evidence about the manner in which he drove. Accordingly, " 'it [was] possible that this death really was an accident.' "[4] But in this case, there was evidence

---

[1] OCGA § 40-6-390 (a).

[2] *Klaub v. State*, 255 Ga. App. 40, 42 (1) (564 SE2d 471) (2002).

[3] Id.

[4] Id. at 44.

— independent of the collision itself — that Winston drove in a reckless manner.

(b) Under OCGA § 40-6-93, "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway [and] shall give warning by sounding his horn when necessary. . . ." Our Supreme Court has held that this statute requires drivers to exercise ordinary care to "discover and avoid persons in the roadway."[5] The same evidence that supported Winston's reckless driving conviction also permitted the jury to conclude that she failed to exercise due care to avoid colliding with Brown and Burton. Thus, the evidence was sufficient to support her conviction for failure to exercise due care.

(c) With respect to both convictions, Winston argues that inconsistencies in the testimony of the state's witnesses rendered it "unreliable" and require reversal. But as the state points out, such inconsistencies are for the jury to resolve.[6] As long as there is some competent evidence, even though contradicted, to support each element of the state's case, we must uphold the jury's verdict.[7]

(d) Finally, Winston suggests that the failure of Brown and Burton to cross the street at a properly marked pedestrian crossing mitigates her criminal liability. The issue, however, is not whether Brown and Burton were "jaywalking," but whether Winston drove recklessly and without due care — and there was sufficient evidence that she did so.

2. Winston argues that the trial court erred by allowing her to proceed pro se without ensuring that she had validly waived her right to counsel. We disagree.

Whether a defendant has knowingly and intelligently waived her right to counsel depends on the circumstances of each case.[8] When a defendant wishes to proceed pro se, the trial court has a duty to investigate " 'as long and as thoroughly' " as necessary to determine that the defendant understands " 'the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter.' "[9] In making this determination, the court is not required to use any " 'magic language' " or to ask any

---

[5] *Fountain v. Thompson*, 252 Ga. 256, 257 (312 SE2d 788) (1984).

[6] *Morgan v. State*, 255 Ga. App. 58, 59 (1) (564 SE2d 467) (2002).

[7] *Phoukphanh v. State*, 256 Ga. App. 580 (569 SE2d 259) (2002).

[8] *Bush v. State*, 268 Ga. App. 200, 202 (2) (601 SE2d 511) (2004).

[9] (Citation omitted.) *Gamble v. State*, 235 Ga. App. 777, 780 (4) (510 SE2d 69) (1998); see also *Tucci v. State*, 255 Ga. App. 474, 475 (1) (565 SE2d 831) (2002).

particular questions.[10] On appeal, the state bears the burden of demonstrating a valid waiver, and it may carry this burden by pointing to the trial transcript or other evidence in the record.[11]

The record shows that Winston initially retained an attorney to represent her, but, after a hearing that apparently was not transcribed, the court permitted counsel to withdraw due to a fee dispute. Winston wrote a letter to the court expressing her dissatisfaction with the hearing. The letter indicates that, at the hearing, Winston told the court that she could not afford a lawyer and would represent herself, and the court responded that she could receive jail time and that, if she represented herself, she would be held to the same standards as an attorney.

After receiving the letter, the court appointed counsel to represent Winston. The court also wrote Winston a letter stating, in relevant part:

> Regarding my informing you of your possible incarceration if convicted, as well as to holding you to the same standards as an attorney, I stand by those statements. Under Georgia law, I am REQUIRED to inform an individual who proceeds to trial without counsel of the dangers of self-representation. That includes both the possible punishments as well as the complexities of trying the case without legal training. For example, you may have a critical piece of evidence that you wish the Court to consider, but unless you lay the proper foundation, it would not be admissible. That foundation is the same for both attorneys and non-attorneys.

Appointed counsel filed various motions on Winston's behalf, but Winston discharged her before trial over a disagreement about a defense witness.

At the start of trial, the following exchange occurred:

> THE COURT: One of the things that I need to go over with you, Ms. Winston, is you're wanting a jury trial and you're representing yourself.
> THE DEFENDANT: That's right.
> THE COURT: As far as I understand the law — we've had

---

[10] *Tucci*, supra; see also *Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000). We note, however, that "the best way to ensure that a defendant fully appreciates the right [she] has chosen to relinquish, and that trial judges fully understand their duty in this process, is for the trial court to address each factor, individually, and on the record." *Banks v. State*, 260 Ga. App. 515, 520 (2) (580 SE2d 308) (2003).

[11] *McCants v. State*, 255 Ga. App. 133, 134 (1) (564 SE2d 532) (2002).

these discussions in the past but never on the record. I need to do this on the record. The law requires that I make sure that you understand that you're waiving your right to counsel and the dangers of proceeding without counsel. . . . What is the highest education level that you've achieved?

THE DEFENDANT: Technical college.

THE COURT: So you've gotten your high school diploma, and you've gone to technical school so I assume you're able to read and write. You've got lots of documents sitting there on your desk.

THE DEFENDANT: Yes, sir.

THE COURT: You understand that each of the charges that you're facing today — I believe there are two, if I've got it correct —

[ASSISTANT SOLICITOR]: Your honor, . . . I filed an amended accusation entitled Amended Accusation Three. Count one is a reckless driving charge; count two, failure to exercise due care. . . . Then we have an accusation entitled amended accusation three, too fast for conditions. I filed that with the clerk's office last week, and I sent a copy to Ms. Winston.

THE COURT: It's a total of three separate charges? Is that correct?

[ASSISTANT SOLICITOR]: Yes.

THE COURT: And each [is] a misdemeanor and each carries twelve months and a thousand-dollar fine, is that correct?

[ASSISTANT SOLICITOR]: That's correct.

THE COURT: You need to understand that if you were to go to trial and get convicted, the maximum punishment that the court can impose is twelve months or a thousand-dollar fine or both. And I think we've talked about this in the past. It's unlikely that in a traffic case that I would impose that; but before going to trial, you need to realize that I have the ability or I can impose that sentence if I deem it warranted. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You know, I've been an attorney now over 20-something years, I've been on the bench eight years, and I still have trouble with evidence. . . . So as a non-attorney, the evidence part of the case may be difficult for you. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: For example, two of the things that come to mind most often for me is you might have a photograph that you'd want to get into evidence. . . . You can't simply give that photograph to the jury. There has to be a foundation laid, and

you're charged with knowing that. I can't teach you the law during this case because I'm not on your side; I'm not on the state's side. I'm just neutral so I can't teach law during this case. You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Another example that comes up oftentimes is [hearsay statements]. . . . [S]o I'm just trying to give you — there's some evidentiary problems you may have, and you understand that's part of the danger of representing yourself. So it's your decision to represent yourself even though you know the dangers and even though you know that I will appoint an attorney to represent you free of charge. Is that true?

THE DEFENDANT: That is my decision.

The court then found that Winston had validly waived her right to counsel and had chosen to represent herself. The court offered her a continuance to prepare for trial, but Winston declined, stating that "[t]his has been going on too long."

The record shows that Winston was aware of the charges against her and the possible sentence she faced. Although there is no explicit discussion on the record of possible defenses, it is apparent that Winston had discussed potential defense witnesses with her appointed counsel and had clear ideas about how to defend herself. Finally, the court repeatedly warned her of the dangers of self-representation, specifically mentioning possible evidentiary pitfalls. Despite these warnings, Winston plainly stated that she wished to proceed pro se. Under these circumstances, the court did not err in concluding that her waiver of counsel was valid.

3. Citing *Boggs v. State*,[12] Winston argues that the trial court erred by preventing her from asking Brown about his pending civil suit against her. In *Boggs*, we held that "[i]n criminal cases, it is reversible error where there is conflicting evidence to refuse to permit the State's witness on cross-examination to testify that he has a damage suit pending based on the same facts involved in the criminal case."[13]

We agree with the state that *Boggs* is not implicated here because Winston did not directly ask Brown about the civil suit. Rather, she asked, "Are you represented by an attorney?" The assistant solicitor objected on relevancy grounds, and the court sustained the objection. *Boggs* holds that information about a related civil damages suit is

---

[12] 195 Ga. App. 605 (394 SE2d 401) (1990).
[13] (Citation omitted.) Id. at 606.

relevant and admissible, but it does not hold that general questions about whether a witness has counsel are proper. In any event, the jury was made aware of the pending civil suit when Winston attempted to impeach the state's witnesses using their depositions in that case. Accordingly, we find no error.

4. Winston complains that the trial court erred by requiring her to tender Harper's police report into evidence before impeaching him with it. She claims that the unnecessary admission of the report caused her to lose her right to opening and concluding argument.

The transcript, however, shows that the court did not require Winston to tender the police report before impeaching Harper with it. Rather, she presented the report; the assistant solicitor stated that he would not object if she wanted to "put it into evidence right now"; Winston tendered the report; and the trial court admitted it. Winston's real argument seems to be that the court failed to inform her that tendering the report was not a prerequisite for using it for impeachment. But Winston cites no authority that the court was obligated to educate her about this — or any other — rule of evidence, and we find none.[14]

5. Winston argues that the trial court erred by failing to sua sponte charge the jury on her sole defense of accident. Although Winston did not testify and closing arguments were not transcribed, she apparently maintained that she was not driving recklessly and did not intend to hit Brown and Burton. "It is error to fail to give a charge on a defendant's sole defense, even where the defendant does not request the charge, if there is some evidence to support the charge. [Cit.]"[15] The evidence in this case, however, did not support a charge on accident.

The defense of accident applies where "it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."[16] The defense is not applicable here because Winston was charged with reckless driving and failure to exercise due care, not with striking pedestrians. Thus, "although [she] had been in an accident, the charges against [her] related not to the accident but to [her] condition while driving."[17] Moreover, the defense of accident is an affirmative defense available only where the defendant admits

---

[14] See generally *Salazar v. State*, 256 Ga. App. 50, 53 (4) (567 SE2d 706) (2002) (trial court had broad discretion in requiring pro se defendant to comply with rules of evidence and procedure, " 'which task appellant willingly undertook when he decided to represent himself' [cit.]").

[15] *Alexis v. State*, 273 Ga. 423, 426 (4) (541 SE2d 636) (2001).

[16] OCGA § 16-2-2.

[17] (Punctuation omitted.) *Stefanell v. State*, 263 Ga. App. 412, 413 (587 SE2d 868) (2003) (accident charge not warranted where defendant was charged with DUI and failure to maintain lane), quoting *Morrissette v. State*, 229 Ga. App. 420, 425 (3) (b) (494 SE2d 8) (1997).

committing the act but seeks to justify, excuse, or mitigate it.[18] Because Winston did not admit to driving recklessly or without due care, she had no right to a charge of accident with regard to those crimes.[19]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED OCTOBER 29, 2004 —
RECONSIDERATION DENIED NOVEMBER 30, 2004 — 

*Maria Murcier-Ashley*, for appellant.

*Carmen D. Smith, Solicitor-General, Leonard M. Geldon, Jody L. Peskin, Assistant Solicitors-General*, for appellee.

[18] *Stefanell*, supra.
[19] See id.