## A05A1548. ANTHONY v. THE STATE.
## A05A1549. BOATWRIGHT v. THE STATE.
(620 SE2d 491)

JOHNSON, Presiding Judge.

Gregory Anthony and Mark Boatwright, who are brothers, were jointly tried before a jury on assault charges. Both men were found guilty of aggravated assault of a person sixty-five years of age or older, and Boatwright was also found guilty of two counts of simple battery. For the aggravated assaults, the trial court sentenced Anthony to serve four years in confinement followed by six years on probation, and the court sentenced Boatwright to serve eight years in confinement followed by seven years of probation. The court also gave Boatwright consecutive sentences of 12 months on probation for each of the simple battery offenses.

Anthony and Boatwright have filed separate appeals from their convictions. Because the appeals arise from the same trial and raise several similar issues, we shall consider them together.

1. Anthony and Boatwright contend that there is insufficient evidence to support their aggravated assault convictions. The contention is without merit.

"On appeal, the evidence must be viewed in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility."[1]

Viewed in the light most favorable to the verdict, the evidence shows that on the night of November 13, 2002, Anthony and Boatwright went to the home of their mother, Dolly Farrow. Anthony stayed outside while Boatwright went inside the house. In the kitchen, Boatwright got into an argument with his mother. He

---

[1] (Citation and punctuation omitted.) *Mullins v. State*, 270 Ga. App. 271, 272 (1) (605 SE2d 913) (2004).

threatened to hit her, threw the telephone against a wall, threw a chair and broke a leg off the dining room table. Boatwright then hit his mother in the chest with his fist, knocking her to the floor.

Robert Jordan, Jr., who was 66 years old and lived with Farrow, came into the kitchen to help Farrow. Boatwright struck Jordan on the head with his fists, knocking him down and causing him to bleed profusely from his head. Boatwright then threatened to hit Jordan with a baseball bat.

Jordan and Farrow ran from the house, and Boatwright came out after them wielding a bed rail. He swung the bed rail at Jordan, who was able to stop it with his hand. During the struggle, Jordan pulled a pocketknife from his pants and cut Boatwright on the hand. Boatwright yelled to Anthony that he had been cut and for his brother to kill Jordan. Anthony then picked up a concrete brick and hit Jordan with it. Boatwright threatened to burn down the house and kill Jordan. He and Anthony then fled from the scene, and were later apprehended by police.

Anthony claims that the evidence is insufficient to support his aggravated assault conviction because of inconsistencies in Jordan's and Farrow's testimony. Such inconsistencies, however, are for the jury, not for us, to resolve.[2] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict."[3] Here, the testimony that Anthony struck Jordan with a brick was sufficient to support the jury's verdict that he is guilty of aggravated assault.[4]

Boatwright argues that his aggravated assault conviction must be reversed because there is no evidence that he used a deadly weapon against Jordan. Boatwright's argument is flawed because he was not indicted for assaulting Jordan with a deadly weapon. Rather, the relevant count of the indictment charged that he assaulted Jordan with his fists, "objects when used offensively against a person [are] likely to result in serious bodily injury."[5]

---

[2] *Winston v. State*, 270 Ga. App. 664, 666 (1) (c) (607 SE2d 147) (2004).

[3] (Punctuation and footnotes omitted.) *Horton v. State*, 269 Ga. App. 407, 408 (604 SE2d 273) (2004).

[4] OCGA § 16-5-21 (a) (2).

[5] Boatwright was also indicted in a separate count for aggravated assault in that he assaulted Jordan with a bed rail, an object which, when used offensively against a person, is likely to result in serious bodily injury. On that count, however, the jury did not find him guilty of aggravated assault, and instead found him guilty of the lesser included offense of simple battery. On appeal, Boatwright has challenged the sufficiency of the evidence supporting only his conviction for aggravated assault by use of his fists.

Under OCGA § 16-5-21 (a) (2), a person commits the offense of aggravated assault when he assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." This subsection is a disjunctive clause that provides alternative bases for conviction.[6] Since the indictment charged that Boatwright's fists were likely to result in serious bodily injury, no reference to, or evidence of, a deadly weapon was required at trial.[7]

2. Boatwright further contends that the aggravated assault count of the indictment under which he was convicted is fatally flawed because it does not allege the manner in which his fists were used to cause serious bodily injury or how they served as a deadly weapon. As noted above in Division 1, Boatwright was not indicted for using his fists as a deadly weapon, so any argument premised on the concept of a deadly weapon is misplaced.[8] Likewise, Boatwright was not indicted for actually causing serious bodily injury with his fists; rather, the indictment alleged that his fists are objects which, when used offensively against a person, *are likely* to result in serious bodily injury. Since there is no allegation in the indictment that serious bodily injury in fact occurred, any argument premised on such an allegation is also misplaced.

Even if the underlying premises of Boatwright's argument were not misplaced, he has supported his argument with the inapposite case of *Smith v. Hardrick*.[9] The defective indictment at issue in that case is materially different from the proper indictment in this case.

In that case, the aggravated assault indictment merely alleged "an assault upon the victim by placing his hands around her neck and using his hands to apply pressure to her neck contrary to the law." The fatally defective indictment in *Smith* failed to allege "with a deadly weapon," or "with any object likely to result in serious bodily injury."[10]

Unlike the indictment in *Smith*, the indictment in the instant case is not defective because it properly alleges that the aggravated assault was committed with objects likely to cause serious bodily

---

[6] *Jay v. State*, 232 Ga. App. 661, 662 (1) (503 SE2d 563) (1998).

[7] Id.

[8] See *Crider v. State*, 246 Ga. App. 765, 768-769 (3) (542 SE2d 163) (2000) (indictment alleging aggravated assault by kicking and striking with hands need not further allege hands and feet used as deadly weapon).

[9] 266 Ga. 54 (464 SE2d 198) (1995).

[10] (Citations and punctuation omitted.) *Jay*, supra at 662-663 (1).

injury.[11] Finally, even if there were an imperfection in the indictment, Boatwright was not misled or prejudiced by the indictment, and therefore he is not entitled to a reversal of his conviction.[12]

3. Anthony and Boatwright assert that the trial court erred in refusing to require the hospital where Jordan was treated after the assault to release all of his medical records. We find no error.

The record reveals that Anthony secured a subpoena from the superior court clerk directing the hospital to produce the medical records. But the hospital refused to release the records without signed authorization from Jordan. Anthony then moved the trial court to order the hospital to produce the records, and Boatwright joined in that motion.

After a hearing on the motion, the court ruled that Anthony and Boatwright were entitled to anything contained in the medical records which might be exculpatory or impeaching. The court thus ordered the hospital to forward a copy of the records to the court for an in camera inspection. The hospital complied, and the court conducted the in camera examination of the records. Based on its examination, the court found that three pages of the medical records contained material which might benefit the defense, and those pages were provided to Anthony and Boatwright.

Since the trial court performed an in camera inspection, Anthony and Boatwright have the burden of showing that they were denied access to material and favorable evidence.

> If the trial court performs an in camera inspection and denies the defendant access to certain information, on appeal the appellant has the burden of showing both the materiality and the favorable nature of the evidence sought. Mere speculation that the items the appellant wishes to review possibly contain exculpatory information does not satisfy this burden. If the appellant desires to have this inspection reviewed by this court, she must point out what material she believes to have been suppressed and show how she has been prejudiced.[13]

Anthony and Boatwright have not pointed out what material they believe has been suppressed or how they have been prejudiced by the trial court's ruling. Mere speculation that Jordan's medical

---

[11] See *Kemp v. State*, 257 Ga. App. 340, 341 (2) (571 SE2d 412) (2002) (aggravated assault indictment properly charged that kicking feet were likely to cause serious bodily injury).

[12] *Bullard v. State*, 242 Ga. App. 843, 849 (9) (530 SE2d 265) (2000).

[13] (Citations and punctuation omitted.) *Head v. Stripling*, 277 Ga. 403, 407 (1) (590 SE2d 122) (2003).

records possibly contain exculpatory material is not sufficient to meet the appellate burden of showing the materiality and favorable nature of the evidence sought. Anthony and Boatwright have thus failed to show error in the trial court's decision, after its in camera inspection, to release only some of Jordan's medical records.

4. Anthony and Boatwright complain that the trial court erred in allowing Jordan to testify at trial that his head and shoulder were injured during the assaults. They argue that such testimony should not have been allowed because at the pre-trial hearing on their motion to produce medical records the prosecutor declared that the state would not offer medical testimony about the victim's injuries. The argument misconstrues the prosecutor's statements at the prior hearing.

What the prosecutor actually said was this: "First of all . . . at this trial there will be no expert, no medical expert at all giving any testimony about the injuries in this case. Number two, there will be no offer of evidence with regard to the victim's medical history, medical records whatsoever."

As the trial court correctly found, the prosecutor did not state that Jordan would not testify about his injuries. Rather, the prosecutor stated that he would not introduce expert testimony about the injuries, nor would he introduce Jordan's medical records. Contrary to Anthony and Boatwright's arguments, neither of those statements provided any basis for the trial court to bar Jordan from testifying that his head and shoulder had been injured during the attack. Indeed, the trial court properly admitted such testimony about the injuries, which were relevant to the crimes charged. "The injuries sustained in an aggravated assault are relevant to that assault and therefore admissible."[14]

5. Boatwright asserts that the trial court erred in appointing him a new lawyer while his speedy trial demand was pending. The assertion is wholly disingenuous since Boatwright filed a motion expressly waiving his speedy trial demand and asking the trial court to dismiss his first attorney and appoint new counsel. After a hearing, at which Boatwright reiterated his desire to have new counsel appointed and to waive the speedy trial demand, the trial court granted the motion. "A defendant will not be allowed to induce an asserted error, sit silently hoping for acquittal, and obtain a new trial

---

[14] (Citation and punctuation omitted.) *Brown v. State*, 258 Ga. App. 78, 81 (3) (573 SE2d 110) (2002).

when that tactic fails. Induced error is impermissible and furnishes no ground for reversal."[15]

6. Boatwright complains that the trial court should have found that his trial counsel was ineffective in failing to move for a continuance, request a mental evaluation of Boatwright and have a particular witness appear at trial. In order to prove ineffective assistance, Boatwright must show both that counsel's performance fell below a reasonable standard of conduct and that, but for counsel's deficient performance, there is a reasonable probability the outcome of the trial would have been different.[16] Boatwright has not made either showing.

(a) Boatwright's claim that counsel was ineffective in failing to move for a continuance is contradicted by the record, which reveals that counsel did in fact move for a continuance. On August 28, 2003, the trial court granted the motion, continuing the case for nearly a month, until September 22, 2003.

Moreover, at the motion for new trial hearing, counsel testified that he had prepared the case thoroughly; that he had received a copy of the file of Boatwright's prior attorney; that he had discussed the case with the prosecutor and with counsel for co-defendant Anthony; that he had met with Boatwright at least ten times before trial, had given Boatwright a copy of the discovery provided by the state, and had discussed the state's evidence and plea offers with him. Under these circumstances, counsel was not ineffective in failing to seek another continuance.[17]

(b) Boatwright contends that counsel should have sought an examination of him to determine if he was suffering from some mental health condition at the time of the crimes. The only evidence he relies on to support this contention is his own testimony at the motion for new trial hearing that at some point in the early 1990s he was transferred from a jail to a mental health facility where he was given some sort of medication, although he does not know what the medication was. He was subsequently returned to jail without any further medication, and was later released from jail. He has never had any other psychiatric treatment.

At the motion hearing, Boatwright's attorney testified that there was nothing about Boatwright that would have led him to believe that he had a mental health problem. He testified that Boatwright always

---

[15] (Citation, punctuation and footnote omitted.) *Brison v. State*, 248 Ga. App. 168, 169 (3) (545 SE2d 345) (2001).

[16] *Napier v. State*, 276 Ga. 769, 775 (8) (583 SE2d 825) (2003).

[17] See *Fairclough v. State*, 276 Ga. 602, 605 (4) (581 SE2d 3) (2003); *Lowe v. State*, 267 Ga. 410, 414 (5) (b) (478 SE2d 762) (1996); *Carter v. State*, 265 Ga. App. 44, 49-50 (4) (c) (593 SE2d 69) (2004).

seemed under control and that from his perspective Boatwright's mental health was not an issue in the case.

Given counsel's observations about Boatwright, the fact that Boatwright cannot identify what medication he was given approximately a decade before the crimes in this case occurred, and the absence of any evidence that he has ever been diagnosed with a mental health condition, we find no basis for concluding that counsel was deficient in failing to seek an evaluation to determine if Boatwright was suffering from a mental health condition at the time of the crimes or that there is a substantial likelihood that a psychiatric evaluation would have had any effect on the outcome of the trial.[18]

(c) As for his claim that counsel should have had a particular witness appear at trial, the decision about which defense witnesses to call is a matter of trial strategy and tactics that does not usually constitute ineffective assistance of counsel.[19] Boatwright's counsel testified at the motion for new trial hearing that he made the strategic decision not to enforce the subpoena of the witness, a law enforcement officer, because he would have been a hostile witness and his testimony would have been repetitive of other testimony.

Not only did Boatwright admit at the motion for new trial hearing that he did not know what the deputy's testimony would have been or if it would have helped his defense, but he also failed to have the deputy testify at the hearing. If a missing witness does not testify at the motion for new trial hearing, there is no evidence supporting the claim that the witness is crucial to the defense.[20]

*Judgment affirmed in Case Nos. A05A1548 and A05A1549. Ruffin, C. J., and Barnes, J., concur.*

DECIDED AUGUST 30, 2005.

*Renate D. Moody*, for appellant (case no. A05A1548).
*Veronica E. Brinson*, for appellant (case no. A05A1549).
*Howard Z. Simms, District Attorney, Eugene Felton, Jr., Assistant District Attorney*, for appellee.

---

[18] See *Hale v. State*, 274 Ga. 863, 864 (2) (561 SE2d 70) (2002).
[19] *Beattie v. State*, 240 Ga. App. 327, 328 (2) (b) (523 SE2d 389) (1999).
[20] *Hudson v. State*, 277 Ga. 581, 585 (4) (a) (591 SE2d 807) (2004).