### A08A0737. GRAY v. THE STATE.
(662 SE2d 339)

MIKELL, Judge.

Kendrick Nathaniel Gray was indicted on two counts of aggravated assault, one count of burglary, and two counts of cruelty to children. A jury found him guilty of aggravated assault and burglary and, on the cruelty to children counts, of the lesser offense of cruelty to children in the third degree. The trial court sentenced Gray to twenty years on the first three counts — twelve in prison and eight on probation. The court did not impose any sentence on the cruelty

---

to children convictions. On appeal from the denial of his motion for new trial, Gray argues that the evidence was insufficient; that his trial counsel was ineffective; and that the rule of sequestration was violated. Finding no error, we affirm.

1. Gray challenges the sufficiency of the evidence to support his convictions of aggravated assault and burglary. On appeal, Gray no longer enjoys the presumption of innocence.[1] We view the evidence in the light most favorable to the verdict and do not weigh the evidence or determine witness credibility.[2] We determine only whether the evidence was sufficient for a rational trier of fact to find Gray guilty of the charged offenses beyond a reasonable doubt.[3]

Properly viewed, the evidence adduced at trial shows that in the middle of the night on September 19, 2004, Gray entered the home of his former girlfriend, Qiana Worlds, whom he had been stalking for months, beat Worlds and her friend, Corey Turman, with a baseball bat, and fled. Deputy Jamie Fowler of the Douglas County Sheriff's Department testified that he was dispatched to Worlds's residence at approximately 4:00 a.m. to respond to a 911 "hang-up" call. Worlds answered the door holding a bloody rag to her face, and she told Fowler that Gray had entered the home and struck her with a baseball bat. Fowler entered the home and observed that the side of Turman's face was red and swollen and had a burn mark on it. Worlds's two young children were in the home as well.

Worlds testified that Gray is the father of her children; that she and Gray ended their six-year relationship in February 2004; that he began to stalk her toward the end of their relationship, stealing her cell phone, following her, and calling her friends, all in an attempt to find out if she was seeing other men; and that he entered her house without permission on several occasions prior to this one. Once, at night, Worlds heard a noise, turned on her light, and found Gray standing beside her bed. She reported these incidents to the police. Worlds changed the lock on her front door, but Gray told her that it would not stop him. She assumed that he was entering her home through the sliding doors.

On the night of the incident, Turman came over and they went to sleep. Worlds's children knocked on the bedroom door in the middle of the night. While Worlds was putting them back to bed, she saw Gray coming up the stairs. He had a baseball bat, and he forced his way into her bedroom. She grabbed the bat, they fought, and Gray knocked her onto the floor. Worlds did not have a phone in her

---

[1] *Andrews v. State*, 275 Ga. App. 426 (620 SE2d 629) (2005).

[2] Id.

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Accord *Kates v. State*, 269 Ga. App. 8 (603 SE2d 342) (2004).

room, so she ran into the guest room and called 911. She ran back toward her room and crossed paths with Gray, who was screaming, "that's all I wanted." Worlds saw Turman laying on the floor of her bedroom and then realized that she had a gash on the side of her face, which was bleeding. She testified that she did not know whether she was struck with the bat while in the hallway or in her bedroom, but there was blood on the wall in the hall. The gash required stitches, and Worlds has a scar on her face. Worlds testified that she did not let Gray into her home that night. She testified that after the incident, she noticed that the screen on her kitchen window was missing, so Gray may have come in through the window or through the sliding doors. Fowler testified that the house may have been entered through the sliding glass door in the basement, which was open. However, there was no forced entry. He also testified that the front door was locked, and that the rear kitchen door was blocked by items piled in front of it.

Turman testified that he heard one of Worlds's children knock on the door but started to go back to sleep after he heard Worlds tell the child to go back to her room. About two minutes later he heard a "thump." Then he heard Worlds ask Gray, "what are you doing in my house? . . . How did you get in here?" Next, Turman heard Gray swing the bat, which hit the wall. Turman stood up and started getting dressed, and he saw Gray come toward him holding an aluminum bat. The next thing Turman knew, he was out cold on the floor. When he woke up, Worlds told him that Gray was gone. Turman felt pressure and swelling on the side of his head. He was taken by ambulance to the hospital. The next day, Gray called Turman on his cell phone while he was still in the hospital. Turman testified that Gray said, "How are you feeling right now, home boy? . . . [D]id the bat hurt you? Next time I'm going to get a gun."

Sheriff's investigator John Sweat, who was called to Worlds's home shortly after the incident, testified that both victims informed him that Gray had struck each of them in the head with a baseball bat and then fled the house. Sweat did not see any sign of forcible entry.

A neighbor who could not sleep that night testified that at 1:30 a.m., she was looking out of her picture window in her living room when she saw someone walking around Worlds's house. The automatic sensor light over Worlds's garage door came on, and it got the neighbor's attention. The man kept walking from the front to the back of the house. Then he walked down the street, came back, and circled the house. The neighbor called 911 and reported the man. She then went to sleep. Deputy Gordan "Chris" Ernst testified that he was dispatched to the street in response to the neighbor's call. Ernst saw two young ladies sitting outside and asked whether they had

seen anyone walking around in the neighborhood. They had not, but reported seeing an SUV parked up the street. Ernst found the vehicle, a Ford Expedition, parked in a driveway. He ran the tag, and found that the SUV belonged to Gray. Ernst assumed Gray was inside the home where his vehicle was parked, so Ernst left the area. That house was next door to Worlds's residence.

Gray testified that Worlds let him in the front door between 1:30 and 2:00 a.m. because he promised to give her money for child support; that Worlds let him sleep on the couch that night; that he was parked at the curb, not in the driveway next door; that he heard his younger daughter upstairs crying for Worlds; and that he went upstairs to Worlds's bedroom and saw Turman. Gray further testified that he did not have a bat or anything else in his hand; that Worlds wrapped a long, blunt object around his neck; that he flipped her onto the floor; and that Turman joined the altercation. Then Gray left. He also testified that he had given Worlds back the keys to her house and her garage door opener, and that he did not make a copy of any of her keys. Gray claimed he did not know how Worlds received her injuries that night, although he believed that she may have hit her head on the corner of the bed.

(a) *Aggravated Assault.* "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[4] Gray claims that the evidence is insufficient to support his aggravated assault convictions because of inconsistencies in Worlds's and Turman's testimony. Such inconsistencies, however, are solely for the jury to resolve.[5]

> Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[6]

The testimony of the state's witnesses that Gray struck the victims with the baseball bat, coupled with testimony and photographs depicting their injuries, amply support Gray's conviction of two

---

[4] OCGA § 16-5-21 (a) (2).

[5] *Anthony v. State*, 275 Ga. App. 274, 275 (1) (620 SE2d 491) (2005).

[6] (Punctuation and footnote omitted.) Id.

counts of aggravated assault.[7]

(b) *Burglary.* Under OCGA § 16-7-1 (a), a person commits burglary "when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another." Gray claims that, in the absence of any forced entry, there is no evidence to support a finding that he entered Worlds's home without authority. "But forced entry is not an element of burglary."[8] Here, Worlds testified that although Gray stayed with her for about a month when she first bought her house, when he began entering her home without permission, she requested that he return her garage door opener and keys, and he did. However, he continued to enter without permission, even after she changed the lock on her front door. She called 911 during some of those incidents. Both victims testified that on the night of the attack, Worlds exclaimed, "what are you doing here?" when she saw Gray coming upstairs. Worlds testified that she did not invite, or allow, Gray into her home that night. This evidence authorized the jury to find beyond a reasonable doubt that Gray entered Worlds's house without authority and with the intent to commit aggravated assault.[9]

2. Gray next claims that his trial counsel rendered ineffective assistance.

> To establish ineffectiveness, a defendant must prove that his trial counsel's performance was deficient and the deficiency prejudiced his defense to the extent that there was a reasonable probability the result of the trial would have been different but for defense counsel's unprofessional deficiencies.[10]

The "reviewing court need not address both components if the defendant makes an insufficient showing on one, nor must the components be addressed in any particular order."[11] The defendant must overcome the "strong presumption . . . that trial counsel performed within the wide range of reasonable professional assistance."[12] "Finally, we will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could

---

[7] See id. Accord *Brown v. State*, 287 Ga. App. 115, 116-117 (1) (650 SE2d 780) (2007).

[8] (Citation omitted.) *Redwine v. State*, 280 Ga. 58, 59 (1) (623 SE2d 485) (2005).

[9] *Jackson*, supra.

[10] (Citations omitted.) *Cline v. State*, 224 Ga. App. 235, 237-238 (4) (480 SE2d 269) (1997).

[11] (Punctuation and footnote omitted.) *Davis v. State*, 287 Ga. App. 786, 788 (2) (653 SE2d 104) (2007).

[12] (Citation omitted.) *Leonard v. State*, 279 Ga. App. 192, 194 (2) (630 SE2d 804) (2006).

not reliably have produced a just result."[13]

Gray's ineffective assistance claim is based on counsel's failure to object when Sweat testified, inter alia, as follows: that an abrasion on Gray's arm was consistent with a briar mark obtained when running through the woods, not with a fingernail scratch; that Gray had no injuries consistent with a fight; that the victims' statements were consistent with the physical evidence; and that the victims' injuries were consistent with being hit in the head with a metal baseball bat. Gray asserts that Sweat was permitted to give opinion testimony, without objection, on several of the ultimate issues in the case, which invaded the province of the jury. Gray also argues that Sweat's testimony improperly bolstered the testimony of the state's witnesses.[14] Gray's contentions are unpersuasive.

"Although an expert witness may not testify as to his opinion of the victim's truthfulness, the witness may express an opinion as to whether medical or other objective evidence in the case is consistent with the victim's story."[15] Here, Sweat did not state his opinion as to the veracity of the victims or the defendant. He testified that their injuries, or lack thereof, were either consistent or inconsistent with the physical evidence or their testimony. Thus, his testimony was not objectionable as impermissible bolstering.[16] Further, we reject Gray's claim that Sweat was not qualified as an expert. "To qualify as an expert, generally all that is required is that a person be knowledgeable in a particular matter; his special knowledge may be derived from experience as well as study, and formal education in the subject is not a requisite for expert status."[17] Sweat testified that he has worked for the sheriff's department for fifteen years and for its criminal investigations division for nine years; that he has received over 1,000 hours of training; that he is assigned to the major crimes unit, where he investigates rapes, armed robberies, and homicides; and that he has received advanced training on crime scene reconstruction. Moreover, although Sweat was not formally tendered as an expert, "it is not required that an expert be formally tendered."[18]

---

[13] (Punctuation and footnote omitted.) *Nichols v. State*, 288 Ga. App. 118, 121 (3) (653 SE2d 300) (2007).

[14] See *Williams v. State*, 254 Ga. 508, 510 (2) (330 SE2d 353) (1985) ("[a] party may not bolster his opinion as to the ultimate issue with expert testimony when the jury could reach the same conclusion 'independently of the opinion of others' ") (citation and footnote omitted).

[15] (Citation and punctuation omitted.) *Satterwhite v. State*, 212 Ga. App. 543-544 (2) (442 SE2d 5) (1994). See also *Odom v. State*, 243 Ga. App. 227-228 (1) (531 SE2d 207) (2000).

[16] See *Goldey v. State*, 289 Ga. App. 198, 199 (2) (a) (656 SE2d 549) (2008).

[17] (Citation and punctuation omitted.) *Weeks v. State*, 270 Ga. App. 889, 893 (2) (608 SE2d 259) (2004).

[18] (Citations omitted.) *Morrow v. State*, 230 Ga. App. 137, 140 (3) (a) (495 SE2d 609) (1998).

Finally, even if Sweat's testimony was not "beyond the ken of the average layman,"[19] we would not conclude that trial counsel was ineffective for failing to object thereto. At the new trial hearing, trial counsel testified that he did not object to Sweat's testimony because by that point in the trial, he had observed the jurors and concluded from their facial expressions that he had a "hostile" jury, and he did not want to inflame them by "jumping up every two seconds and making an objection." Instead, trial counsel testified that he decided to wait until closing argument and point out the inconsistencies in the witnesses' testimony. The "decision of whether to interpose certain objections is a matter of trial strategy and tactics."[20] "[T]rial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them."[21] Trial counsel's strategy was not patently unreasonable, and it was not error to deny his motion for new trial on the basis of ineffective assistance of counsel.[22]

3. Finally, Gray argues that the trial court violated the rule of sequestration "without sufficient reason" by permitting Sweat to remain in the courtroom during the trial. There was no error. The record shows that the prosecutor requested Sweat's presence in the courtroom to assist her in the presentation of the case because it had been transferred to her the week before trial. "The trial court is vested with discretion to make an exception to the sequestration rule when the prosecution requests that the investigating officer remain to aid in the presentation of the [s]tate's case."[23] "Because the witness was the chief investigator in the case and the prosecutor requested his exception from the rule of sequestration to assist in the prosecution, we perceive no abuse of the trial court's discretion in permitting the exception[ ] to the rule of sequestration."[24] Further, Gray claims that the trial court abused its discretion by failing to require that the investigator testify before any other witness. He has waived this claim for appellate review, however, by failing to raise it

---

[19] (Citations and punctuation omitted.) *Winfrey v. State*, 286 Ga. App. 718, 722 (4) (650 SE2d 262) (2007) (error in admitting detective's testimony, over objection, that he was confident that defendant was responsible for victim's shooting, was harmless).

[20] (Punctuation and footnote omitted.) *Boyt v. State*, 286 Ga. App. 460, 463 (2) (b) (649 SE2d 589) (2007) (failure to object to investigator's opinion testimony allegedly concerning ultimate issues of fact deemed reasonable trial strategy).

[21] (Punctuation and footnote omitted.) *Harris v. State*, 279 Ga. App. 570, 575-576 (3) (631 SE2d 772) (2006).

[22] See *Goldey*, supra at 199-200 (2) (a) (failure to raise a viable improper bolstering objection held not ineffective).

[23] (Citation omitted.) *Dunson v. State*, 275 Ga. App. 515, 516 (1) (621 SE2d 525) (2005).

[24] (Citations omitted.) *Flowers v. State*, 275 Ga. App. 592, 594 (3) (571 SE2d 381) (2002).

at trial. In any event, our Supreme Court has held that, under these circumstances, a trial court need not insist that an investigator testify as the state's first witness.[25]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MAY 19, 2008.

*Hall, Hirsh & McDaniel, James M. McDaniel*, for appellant.
*David McDade, District Attorney, James A. Dooley, Benjamin Von Schuch, Assistant District Attorneys*, for appellee.

---

[25] *Bryant v. State*, 274 Ga. 798, 801 (4) (560 SE2d 23) (2002).