A08A1465. WINDHAM v. THE STATE.
(668 SE2d 526)

MIKELL, Judge.
Following a jury trial in the Fulton County Superior Court, Corey Windham was convicted of robbery by intimidation or force (Count 1), and three counts of aggravated assault (Counts 2, 3, and 4). The trial court sentenced Windham to twenty years, with ten to be served in confinement and the balance on probation. On appeal

---

from the denial of his motion for new trial, Windham contends that the evidence was insufficient to support his convictions. We affirm.

Viewed in the light most favorable to the verdict, the record shows that Charneequa Lee met Windham in August 2001, and began dating him later that year. During the relationship, Lee admired a jogging suit of Windham's, and he told her that she could borrow it. In December 2001, Lee broke up with Windham. On December 21, 2001, Windham called Lee and asked her to return the jogging suit. Later that same day Windham showed up at Lee's house. He kicked in the front door, asked for the jogging suit, and then punched Lee in the face when she told him she did not have it.

Approximately two weeks later, on January 4, 2002, Lee and her friend Lennin Rosario, who was wearing Windham's jogging suit, were in the parking lot of the Union City Wal-Mart when they saw Windham and his friend "T" exit a Chevrolet Caprice. Windham said "[w]hat the fuck . . . let's go 'T' " and got back into the car. Lee and Rosario got into Lee's mother's car, a Dodge Intrepid, and Rosario drove out of the parking lot. Windham followed Lee and Rosario up Jonesboro Road and then came up beside their vehicle, rolled down his window, and said "I'm gonna kill you, bitch, I'm gonna kill you." Windham continued to follow Lee and Rosario. When they got to Flat Shoals Road and Old National Highway, Rosario noticed Windham's best friend Jamie Williams, a/k/a "Dirty," giving chase in a separate vehicle. Both Windham and Williams were talking on their cell phones.

At a stop sign on Burdette Way, Windham rammed his vehicle into the rear of Lee's vehicle, and Williams side-swiped the passenger side with his vehicle. Windham then drove his vehicle into the driver's side of Lee's vehicle, forcing it up onto the curb. Windham then jumped out of his vehicle, ran to the passenger side of Lee's vehicle, yanked Lee out of the car, and hit her in the face. Rosario climbed out the passenger side to help Lee and the two men began fighting. Windham called for "T," Williams, and Williams's passenger to come over and the four men jumped on Rosario, and then began punching and kicking him. All four men were wearing boots. After the men stomped and kicked Rosario, they asked him if he had any money and started going through his pockets. Windham then took off the jogging suit Rosario was wearing, leaving him in his underwear, t-shirt, and socks. Windham also took Rosario's shoes and his license, and Lee's purse. Lee and Rosario fled to a nearby gym, where they called police.

Officer Troybred Blackmon of the Fulton County Police Department responded to the scene, where he observed a gold Dodge Intrepid that appeared to have been involved in an accident. When

Lee and Rosario met him at the scene, Blackmon observed that Rosario was clad only in a t-shirt, underwear, and socks.

Detective Glen Kalish of the Fulton County Police Department investigated the incident. He took statements from Lee and Rosario, both of whom identified Windham as the perpetrator. On January 29, 2002, a Chevrolet Caprice fitting the description of the car Windham was driving on January 4, 2002, was discovered parked in the driveway of a home on Dorian Drive in Union City. The vehicle was damaged, but not in the way Kalish expected. Kalish testified that he expected to find damage to the "right front fender or quarter panel" of the front passenger door. During a search of the home, a "quarter panel" was discovered in the crawl space beneath the house. According to Kalish, the panel was consistent with a "right front fender [one] would expect to find on a Caprice." The panel had been damaged and the damage was consistent with what Kalish "expected to find on the vehicle." Windham was arrested on September 18, 2002.

At trial, Windham acknowledged following Lee and Rosario in order to get his jogging suit back but denied intentionally hitting their vehicle. According to Windham, after he saw Rosario wearing his jogging suit in the parking lot, he followed them in "Cortez's" car for approximately 15 miles in order to get the suit back. Windham called Williams for assistance, and the two vehicles attempted to block Lee's vehicle in order to get Windham's jogging suit. According to Windham, Lee's vehicle ran into Williams's vehicle, but Windham could not brake in time and rear ended Lee's vehicle. When Windham got out of the car, Rosario grabbed him. Cortez, Williams, and Williams's passenger then hit and kicked Rosario, and Cortez took the jogging suit. Windham and Cortez then drove off in Cortez's car. Windham denied hitting, kicking, or robbing Rosario.

1. Windham contends that the evidence presented at trial was insufficient to sustain his conviction for robbery by force and intimidation because the jogging suit belonged to him, and the state failed to produce Rosario's sneakers at trial. We disagree.

> A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another: (1) By use of force; [or] (2) By intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another.[1]

Count 1 of the indictment charged that Windham

---

[1] OCGA § 16-8-40 (a).

did unlawfully, with intent to commit theft, by force, by intimidation, and by placing Lennin Rosario in fear of receiving immediate serious bodily injury to himself, take from the person and immediate presence of the said Lennin Rosario a sweat suit and sneakers, the property of Lennin Rosario.

Contrary to Windham's contention, the actual ownership of the jogging suit is irrelevant. "[R]obbery is a crime against possession, and is not affected by concepts of ownership."[2] Here, the evidence showed that Windham chased Rosario in his vehicle and then viciously attacked him in order to obtain the jogging suit Rosario was wearing. Moreover, Windham does not explain why the absence of the sneakers at trial renders his conviction for robbery invalid. Both Lee and Rosario testified at trial that Windham took Rosario's sneakers after attacking him; it is immaterial that the state did not introduce the actual sneakers at trial. Accordingly, the jury was authorized to convict Windham of robbery by force and intimidation.

2. Windham next contends the evidence is insufficient to support his convictions for aggravated assault. OCGA § 16-5-21 (a) (2) provides in relevant part: "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

(a) With regard to Count 2, Windham contends that his conviction must be reversed because there was no evidence that he inflicted serious bodily injury on Rosario with a "shoe clad foot." Count 2 of the indictment charged Windham with committing an "assault upon the person of Lennin Rosario, by kicking and stomping Lennin Rosario with shoe clad feet, a means likely to cause serious bodily injury when used offensively against a person." At trial, Rosario testified that Windham and his cohorts were all wearing boots; that they jumped on him and kicked him several times, resulting in bruises; and that he was knocked unconscious. Lee also testified that Windham and his friends kicked and stomped on Rosario. Contrary to Windham's contention, there was evidence that Rosario sustained serious bodily injury.[3]

---

[2] (Punctuation and footnote omitted.) *Joncamlae v. State*, 257 Ga. App. 459, 460 (1) (a) (571 SE2d 461) (2002).

[3] See, e.g., *Kemp v. State*, 257 Ga. App. 340, 340-341 (1) (571 SE2d 412) (2002) (evidence sufficient to sustain conviction for aggravated assault for stomping victim with boot-clad feet). See also *Banks v. State*, 260 Ga. App. 515, 516 (1) (580 SE2d 308) (2003) (evidence was sufficient to sustain conviction for aggravated assault where victim testified that defendant hit

Even in the absence of injury, we must affirm Windham's conviction on this charge. Windham was not indicted for actually causing serious bodily injury with his shoe-clad feet; rather, the indictment charged that his shoe-clad feet are objects which, when used offensively against a person, *are likely* to result in serious bodily injury.[4] Whether Windham's shoe-clad feet constituted objects likely to result in serious injury was a question of fact for the jury.[5] Given that Windham stomped on and kicked Rosario, rendering him bruised and unconscious, the jury was authorized to convict him of aggravated assault.

(b) With regard to Counts 3 and 4, Windham contends the evidence is insufficient to support his convictions because there is no evidence that he intended to hit Lee's vehicle. Windham claims that the incident was merely an accidental fender-bender.

Count 3 of the indictment charged Windham with committing an

assault upon the person of Lennin Rosario by intentionally driving and steering a motor vehicle into and against the motor vehicle which was then and there occupied by Lennin Rosario, said motor vehicle being a means likely to inflict serious bodily injury when used in the manner used by [Windham].

Count 4 of the indictment alleges the same act against Lee.

Although an automobile is not a deadly weapon per se, it may become one depending upon the manner in which it is used. The question of whether an automobile has been used in such a manner so that it constitutes a deadly or offensive weapon is a matter for the [jury's] determination.[6]

Here, the evidence shows that Windham chased Lee and Rosario in his friend's vehicle for approximately 15 miles; that he rear-ended their vehicle as it attempted to make a turn; and that he ran his vehicle into the driver's side of their vehicle with enough force to

---

and kicked her and officer testified that victim had a bruise on her body and that her breathing was labored); *Gaines v. State*, 258 Ga. App. 902, 903-904 (1) (575 SE2d 704) (2002) (evidence was sufficient to sustain convictions for aggravated assault where victim testified that defendant broke bottle over his head and repeatedly kicked him until he became unconscious); *Anderson v. State*, 257 Ga. App. 602 (1) (571 SE2d 815) (2002) (evidence was sufficient to sustain conviction for aggravated assault where witnesses testified that defendant pushed victim to the ground and kicked him in the face, causing him to bleed).

[4] See *Anthony v. State*, 275 Ga. App. 274, 275 (1) (620 SE2d 491) (2005).

[5] See *Scott v. State*, 243 Ga. App. 383, 385 (1) (d) (532 SE2d 141) (2000).

[6] (Punctuation and footnotes omitted.) *Frayall v. State*, 259 Ga. App. 286, 287 (1) (576 SE2d 654) (2003).

push their vehicle up onto a curb. Lee further testified that during the vehicle chase it was apparent that Windham and Williams were trying to box her in with their vehicles and that she was very scared. Although Windham contends that the incident was merely an "embellished car accident" or "fender bender" and that "Lee ruined her mother's car [and] blamed it on [Windham]" the jury was not required to believe his testimony.[7]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 16, 2008.

*Patrick G. Longhi*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.

---

[7] See *Gaston v. State*, 257 Ga. App. 480, 482 (1) (571 SE2d 477) (2002) (" '[t]he credibility of the witnesses and the weight to be given the evidence are the sole province of the jury' ") (citation omitted).